## Richmond

### VIRGINIA S. BROWN V. RICHARD P. BROWN

September 1, 1977.

Record No. 760556.

Present: All the Justices.

*Betty A. Thompson,* for appellant.

*F. Bruce Bach* (*Jerome F. Leiblich,* on brief), for appellee.

Per Curiam.

This case involves the custody of the two minor sons, ages seven and four, of Richard P. Brown and Virginia S. Brown. The parties separated in January, 1974, and in March, 1974, Mrs. Brown was awarded temporary custody. In November, 1974, she instituted a suit for divorce on the grounds of constructive desertion and cruelty. The husband filed a cross-bill for divorce on the grounds of desertion and adultery and sought custody of the children. On January 2, 1976, after an *ore tenus* hearing, the court transferred custody of the children to Mr. Brown, holding that Mrs. Brown was "not a fit and proper person to have the care and custody of said minor children by reason of an adulterous relationship with the corespondent named in defendant's cross-bill of complaint". Appellant appealed. Thereafter Mr. Brown was awarded an absolute divorce and custody of the children, subject to review by this Court of the matter of custody.

The court certified in narrative form a "written statement of oral testimony" introduced at the hearing which resulted in an award of custody of the children to the father. It recites that Mr. Brown presented evidence concerning his wife's "fitness as a mother and concerning her adulterous relationship with the corespondent named in defendant's cross-bill for a divorce"; and that Mrs. Brown offered testimony "to show her fitness as a mother, such testimony being terminated by the court, it being satisfied that [Mrs. Brown] was fit to care for her children so far as her treatment of the children and their physical care is concerned".

No good purpose would be served by a detailed review of the evidence. Mr. Brown testified and introduced the testimony of a professional investigator, of a personal friend and of a Mrs. Reynolds. Their testimony established that at the time appellant had custody of the children she was living with one Dale Leith. These witnesses also stated that Mrs. Brown was not a good housekeeper; that they observed her apartment in a dirty and unkempt condition; and that the children were not properly cared for in many respects and were neglected.

Mr. Brown testified that his older son had developed a hyperactive condition during the parties' separation; that this

condition appeared to improve while in the father's custody; and that he noted that the child

> "particularly and repeatedly pleaded for the return of the Defendant to the household and asked repeatedly why the other man was sleeping with Mommie instead of the Defendant; That the Defendant noted also that [this child] resorted to long periods of silence; That he was irritable with and slapped his brother and then immediately hugged him; and that he otherwise tended to lose control."

Mr. Brown's witnesses testified that the children appeared to improve in health and behavior while he had custody and that they demonstrated more affection for their father than for their mother. Mrs. Reynolds, a divorcee, testified that her relationship with Mr. Brown was that "of lovers", but such relationship was "never obvious in the presence of the children"; and that she planned to marry appellee when his divorce became final.

Appellant offered her testimony and that of a friend, of a fellow employee and of the wife of her employer. Her three witnesses testified that her children were properly cared for and that her home was not dirty.

The court terminated the testimony of appellant designed to establish the fitness of Mrs. Brown as a mother and the quality of her housekeeping. It observed that it was not prepared to find her an unfit mother because "of her general care for the children"; and that it was only interested in hearing testimony on the relationship between Mrs. Brown and Leith. Mrs. Brown then testified and admitted that "Dale Leith lived with her"; that she and Leith were very fond of each other; and that they planned to marry "when free to do so". She testified that her home was clean; that the children were kept clean, well-fed and well-clothed; and that they were happy, healthy and well-behaved children. She said that her older son was hyperactive and was under a doctor's care, receiving all the medication he required.

Following the taking of testimony on September 26, 1975, the court directed Mrs. Brown to have Leith immediately removed from her apartment and continued the matter to October 14, 1975 for argument of counsel. On October 14th, counsel for appellant presented argument in support of her petition for custody. The court then interrogated defendant as to "his plans

upon taking over custody for providing a proper home for the children". Whereupon the court ruled as follows:

"That the Complainant did maintain in her home together with the minor children of the parties on a permanent basis over an extended period of time the corespondent named in the Defendant's Cross Bill of Complaint filed herein, and that an adulterous relationship existed between them.

"That while the Court was satisfied that the Complainant was otherwise a fit mother and did not find her unfit due to any deficiency in the care of the children while in her custody, the court found, by reason of her adulterous relationship with the corespondent in the same residence of which the minor children also lived, that the Complainant was not a fit and proper person to have the care and custody of the minor children of the parties."

In all custody cases the controlling consideration is always the child's welfare and, in determining the best interest of the child, the court must decide by considering all the facts, including what effect a nonmarital relationship by a parent has on the child. The moral climate in which children are to be raised is an important consideration for the court in determining custody, and adultery is a reflection of a mother's moral values. An illicit relationship to which minor children are exposed cannot be condoned. Such a relationship must necessarily be given the most careful consideration in a custody proceeding.

In *Beck* v. *Beck*, 341 So.2d 580 (La.App. 1977), the court approved a change in custody to the father from the mother who had recently lived with a paramour. The court said:

"[W]here the mother has recently lived in open and public adultery with her paramour for a substantial period of time, in total disregard of the moral principles of our society, the mother is generally held morally unfit for custody. [Citation omitted].

\* \* \*

"It is within common knowledge and experience that a child learns by example, especially from his parents. Such utter disregard for moral guidance and social standards can have but ill effect on the young son." [Citation omitted]. 341 So.2d at 582. *Accord, Denton* v. *Meshell*, 335 So.2d 705 (La.App. 1976).

In *In re Marriage of J- H- M- and E- C- M-*, 544 S.W.2d 582, 585 (Mo.App. 1976), the court said:

> "Adultery is usually insufficient, without more, to stigmatize a mother an unfit custodian, as the principal relevancy of such activity is its effect upon the child. [Citations omitted]. What we may not condone is exposing the children to adulterous and immoral contacts. This is not to say that moral considerations are not factors in awarding custody [Citations omitted], but critical here is that the mother's affairs were conducted with the children's knowledge and while they were present in the house."

See also *L.H.Y.* v. *J.M.Y.*, 535 S.W.2d 304 (Mo.App. 1976) and Wadlington, *Sexual Relations After Separation or Divorce: The New Morality and the Old and New Divorce Laws*, 63 Va.L.Rev. 249 (1977).

■ In the instant case, there was testimony that the relationship between Mrs. Brown and Mr. Leith had an adverse impact on the parties' two children. Their adulterous relationship was admitted. They were openly cohabiting in the presence of her two young children. The court found as a fact that appellant had maintained her home under these conditions over an extended period of time. The court therefore ruled that this adulterous relationship rendered Mrs. Brown an unfit and improper person to have the care and custody of these children.

The decision of the trial judge is peculiarly entitled to respect for he saw the parties, heard the witnesses testify and was in closer touch with the situation than this Court, which is limited to a review of the written record. We are further handicapped here by the absence of a transcript of the testimony and a record of the interrogation of Mr. Brown by the trial court "as to his plans upon taking over custody for providing a proper home for the children."

■ Although the trial court did not specifically recite in its order or in its certification of testimony that it found that the best interest of the children required a transfer of their custody from the mother to the father, it is obvious that it did so conclude. In this review we presume that the trial judge thoroughly weighed all the evidence and decreed custody as he believed would be in the best interest of the children. We cannot

find, under the circumstances of this case, abuse of discretion, requiring reversal and another transfer of the custody of these two minors who have been living with their father for the past twenty months.

*Affirmed.*