## CIRCUIT COURT OF ARLINGTON COUNTY

Carol Ann Carter Bowyer

v.

Michael Bradley Bowyer

November 13, 1978

Case No. (Chancery) 27867

By JUDGE CHARLES H. DUFF

By *a mensa* Decree entered July 19, 1978, Carol Ann Bowyer was granted a divorce from Michael Bradley Bowyer. A prior consent order and property settlement agreement were confirmed and incorporated into the Decree by which the custody of Michael Bradley Bowyer, Jr., age 7, was awarded to his mother, with somewhat complicated visitation rights accorded to the father. The parties will be referred to as the child's "Mother" and "Father" for clarity in this Opinion. The Father has petitioned the Court for a change in custody, alleging that the Mother has and is engaged in an adulterous relationship with one Guy McCombs, and that the atmosphere thus created is detrimental to his son's welfare. He cites *Brown* v. *Brown*, 218 Va. 196 (1977), in support of his petition.

The Mother concedes knowing and on occasion dating Mr. McCombs. She denies that any immoral atmosphere has been created as a result thereof, although she concedes having had sexual relations with McCombs at his apartment. She emphatically denies that she has ever lived with him or has engaged in sex with him at her home. She denies any exposure of such conduct to her son and contends that McCombs and young Michael have a loving and healthy relationship with one another. She denies the applicability

of *Brown* v. *Brown* to the facts involved in the present controversy.

The legal issue presented is simply whether the evidence supports a finding that the best interests of Michael would be served by a change of custody from the Mother to the Father. A careful consideration of all of the evidence leads me to the conclusion that this issue must be answered in the negative.

Much testimony was taken relative to the alleged overindulgence of Michael by his paternal grandmother during the years that she has admittedly cared for the lad while his Mother and Father were employed. There was also evidence of certain alleged negligence on the part of the Mother, reflecting adversely on her judgment. However, these allegations were denied by all parties adversely affected and I do not find that they have been established with the degree of clarity and persuasion necessary to effect a change of custody on the basis thereof. The Court is satisfied that both the paternal grandmother and the Mother are deeply devoted to Michael's welfare, as they see it, and would not intentionally in any manner by their actions visit injury upon him.

The critical issue is whether the Mother's relationship with Mr. McCombs has created an immoral atmosphere so as to bring it within the parameters of the *Brown* decision. In *Brown* the testimony clearly established that while the Mother had custody of her children she was living with one Dale Leigh. The trial court found that the adulterous relationship existing between them was maintained "over an extended period of time" and that the children were exposed to this relationship. The parties were openly cohabiting in the presence of the two young children and accordingly, in the exercise of discretion, the court transferred custody to the father. Apropos to the present issue was the Court's citation of the Missouri decision of *In Re Marriage of JHM and ECM*, 544 S.W.2d 582, as follows:

> Adultery is usually insufficient, without more, to stigmatize a mother an unfit custodian, as the principal relevancy of such activity is its effect upon the child. What we may not condone is exposing the children to adulterous

and immoral contacts. This is not to say that moral considerations are not factors in awarding custody. *But critical here is that the mother's affairs were conducted with the children's knowledge and while they were present in the house.* (italics mine)

I have carefully noted the testimony of Mrs. Bowyer (grandmother) that Michael had referred to seeing his Mother in bed with a man. However, there was considerable evidence which would tend to contradict the same. The Mother denied emphatically that such had ever occurred. No mention was made by Michael to Carolyn Riesenman, a probation counselor who prepared a lengthy report for the Court. Similarly, no mention was made by Michael to Ann Marie Gaybrick, the court psychologist.

With respect to the Mother's association with Mr. McCombs, she concedes that on occasion he has visited at her home in the evenings. She testified that she had called him initially because she was frightened at being followed and at what she termed "harassment." The private detective who had Mrs. Bowyer under surveillance from January 30th through June 11, 1978, testified that he had seen Mr. McCombs come to Carol Bowyer's house at night between three and five times.

The controlling issue in the case is the child's welfare and in deciding such issue the Court must consider all of the facts, including what effect an immoral marital relationship by a parent has on a child. The moral climate in which children are to be raised is an important consideration for the Court in determining custody, and adultery is a reflection of a mother's moral values. An illicit relationship to which a minor child is exposed cannot be condoned; however, before adjudging a mother unfit to have the custody of a minor child the evidence against her must be clear and convincing. *Moore* v. *Moore*, 212 Va. 153 (1971). The record before me does not support such a finding. While Mrs. Carol Bowyer may have been guilty of a legal as well as a moral wrong in her relationship with McCombs, the facts do not support a finding that such relationship was exposed to the child so as to bring this case within the parameters of *Brown* v. *Brown*.

As further developed by the evidence, however, it is clear that there should be some modification in both the Mother's relationship with her child and the visitation rights of the Father and his parents. Rather than arbitrarily form a Decree applying stringent rules in this regard, which rules might result in undue hardship on one or more of the parties of which the Court is unaware, I believe a conference with counsel to discuss the contents of such a Decree would be helpful. In this regard I would appreciate counsel conferring and contacting me for an appropriate meeting.