**CIRCUIT COURT OF HENRICO COUNTY**

William Ray Miller

v.

Virginia Jessup Miller

February 25, 1981

Case No. 80C73

By JUDGE E. BALLARD BAKER

This case involves the custody of four children, a girl twelve and three boys, nine, six and four.

The father, William Miller, obtained a divorce on April 25, 1980, on adultery, with the decree granting custody to him.

Sometime during the latter part of 1979 the marriage between the parties became unsatisfactory to the extent that they separated.

On December 31, 1979, a settlement agreement was signed. Under this agreement Virginia Miller was given custody of the children.

Shortly thereafter, William found out that Virginia had committed adultery prior to the settlement agreement. In early January, 1980, in response to the request of the daughter, Tammy, and his observations, he kept the children on one of his weekend visitations and told Virginia he was not going to return them. On January 17, 1980, he filed his Bill of Complaint alleging adultery and asking custody. Virginia responded and asked for custody. In a hearing on January 31, 1980, Virginia asked that the children be returned to her. There was no evidence presented at that time, but the custody issue was to be heard at an early date.

Prior to any further hearing, Virginia agreed to William retaining custody. Since then, the children have

been in the custody of William and Virginia has had visitation, basically in accord with the provisions agreed upon and made a part of the April 25, 1980, divorce decree.

In February, 1980, Virginia moved to Virginia Beach, remaining there until May 1. In May, Virginia returned to Henrico County and moved into the home of Frank Silva on Perth Road in Henrico County. Frank is the man with whom the divorce adultery was committed. During Virginia's stay in Virginia Beach she dated Frank and he was present during the visitations.

After May 1, 1980, the visitations continued. Virginia and Frank Silva occupied the Perth Road home. She testified that the children were not exposed to them sleeping together, as that did not occur during visitation, but that she did, in response to a question from Tammy, admit that she slept with Silva.

On July 19, 1980, Virginia and Frank Silva were married.

Visitation has continued pretty much in accord with the agreement.

William presented testimony with respect to his care and treatment of the children. As he is employed full time, he has hired a housekeeper who lives in the home and aids with the children. He presented evidence through school teachers, people who know him in his church activity, including the minister and music minister and others supporting his position as a good father, who devotes much time and attention to the children.

Virginia presented testimony of a friend of both with respect to how well she took care of the children prior to the time the marriage became unsatisfactory and Frank Silva. She says that her desire to regain custody was prompted by the unhappiness of the children. She contends that her remarriage has stabilized her life, that she was a good mother to the children before the separation from William, that she is not working and can give the children more time and attention than William. She admits he is a good father but can not do as much for the children as she can.

William acknowledges that the two oldest children want to live with their mother. He is opposed to this because, he says, she cheated on him, lied to him and committed adultery.

The latest cases involving custody disputes, *McCreery* v. *McCreery*, 218 Va. 352 (1977), and *Brown* v. *Brown*, 218 Va. 196 (1977), sum up the law.

As this Court reads *McCreery*, the primary issue in a custody dispute is a determination of what is in the best interest of the children. The right of a child to custodial care is more important than the right of a parent to custody of the child. In considering the child's right to custodial care, there is an inference that their right is best served when a child of tender years is awarded the custodial care of the mother. However, the inference controls only when the evidence shows the mother is fit and other things affecting the child's welfare are equal.

*Brown* involved a mother who was having an adulterous relationship. The trial court's finding that this rendered her an unfit and improper person to have custody of the two small boys was upheld. There are factual distinctions between *Brown* and the present case. Here the adulterous relationship has ceased with Virginia's marriage to Frank Silva, and the evidence with respect to the effect of the relationship was stronger in *Brown*. See 218 Va. 198, 200.

The Court in *Brown* did say, after pointing out that the best interest of the child was the goal:

> the court must decide by considering all the facts, including what effect a nonmarital relationship by a parent has on the child. The moral climate in which children are to be raised is an important consideration for the court in determining custody, and adultery is a reflection of a mother's moral values . . . . (218 Va. 199)
>
> "Adultery is usually insufficient without more, to stigmatize a mother an unfit custodian, as the principal relevancy of such activity is its effect upon the child. What we may not condone is exposing the children to adulterous and immoral contacts." (218 Va. 200).

As between William and Virginia, my observations are:

1. William is inclined to be a bit stricter than Virginia would be and could be a more restrictive parent.

2. William's record with the children since they have been in his custody, since about January 12, 1980, is good. He has them involved in church related activities, and shows an active interest in communicating with their teachers. He is recognizing and arranging help for the oldest boy who has a learning disability. He spends substantial time with them. A weakness of his position is that he is not able, because of his work, to give them the time Virginia could.

3. Virginia was a good mother and was with the children from birth until the separation in 1979. The adulterous relationship was not the cause of the break up of the marriage, and this Court assesses no blame in this case for the failure of the marriage. The relationship she developed with Frank Silva was more the result of the marriage failure.

4. Virginia, not presently employed and not intending to enter the labor market except perhaps as a once-in-a-while employee, would have more time for the children.

5. Virginia, in the period after separation, the fall of 1979 until her remarriage in July 1980, did some impulsive things and did allow the children to visit in the home in which she and Silva lived for over three months. Her relationship with Silva is a reflection of her moral values. She says she has now stabilized her marriage, and that may well be true.

6. Apparently, the two oldest children wish to live with the mother. While, as pointed out in *Hall* v. *Hall*, 210 Va. 668 at 672 (1970), the desires of the children 13, 12 and 11 years of age should be carefully considered along with all the other evidence, such desires are not controlling.

7. It does appear that the children may be happier with the mother. This may be because she apparently does not run as tight a ship as does William.

When all the factors are considered, this Court is of the opinion:

A. Both parents love and can provide good physical care and affection for the children. Neither is unfit.

B. William is more likely to see that the children accomplish their school assignments and is more likely to encourage interest in church-related activities.

C. William has shown himself to be more stable than Virginia, certainly since the fall of 1979.

D. William's judgment in matters relating to the children has been better than Virginia's.

E. While, as noted, both parents are fit, I do not believe that, as between William and Virginia, all other things are equal. Consequently, the tender years inference does not come into play.

This, I consider, a most difficult and very close case. However, in my judgment, the best interest of the children is served by having custody remain with William, with a continuation of liberal visitation to Virginia.

This should not be construed as a victory for William or a defeat for Virginia, though it will be a disappointment. This is only my view of what is best for these children at this time.