CIRCUIT COURT OF HENRICO COUNTY

Walter Amacker

   v.

Marianne Amacker

April 13, 1984

Case No. A-1708-J

By JUDGE E. BALLARD BAKER

This is an appeal to the Order of the Juvenile and Domestic Relations District Court of September 29, 1983, in which Marianne Amacker was awarded custody of the two children of the parties with liberal rights of visitation to Walter Amacker. The children are Tiffany Lynn, who will be 13 on August 8, 1984, and Austin Kent who became 9 on March 14, 1984.

The parties separated on May 1, 1982, and at that time had a written agreement which, among other things provided for joint custody and control of the children, with the children residing with Marianne.

Subsequent to the agreement, Walter obtained a divorce from Marianne on the ground of adultery occurring in May 1983. By petition filed in the Juvenile Court on August 17, 1983, Walter asked that this Court consider the matter of custody. His primary contention then, as is now, is

That the defendant is regularly in the company of Charles F. Lambert, spends the night in his apartment, and places him in

loco parentis to the children of the parties with great frequency.

This Court heard the parties ore tenus on April 2, 1984, and also talked in chambers, in the presence of counsel but not the parties, with Tiffany.

The issue in this case is the effect of the relationship between Marianne and Charles Lambert, who is the person with whom the adultery charge was proven.

Both Marianne and Walter have adequate homes for the children; each presented witnesses to establish their interest, concern and activities with the children. It appears that Walter has a substantial income from his employment with Reynolds Metals, while Marianne teaches piano at St. Christopher's and also privately. The children attend Collegiate School. Both parents profess a love for the children.

Subsequent to the Juvenile Court Order of September 29, 1983, the children have spent almost an equal time with each parent. Walter has visitation three out of every four weekends from Friday afternoon to Monday morning, and Wednesday night. Every fourth weekend the children stay with Marianne, as they also do each Monday, Tuesday and Thursday nights. There is some adjustment to the schedule around special things and holidays, but each parent has substantial time with the children. It seems that visitation is with both children at the same time.

The contention of Walter is that Marianne's relationship with Lambert is the wrong type of moral leadership for a parent to exhibit. Marianne acknowledges that she spends nights at Lambert's apartment when the children are with Walter and that Lambert usually has had dinner with her and the children one night on the weekend the children stay with her. Marianne also admits that Tiffany does not like Lambert to the extent that she does not speak to him at times and is upset with the relationship. She has advised Tiffany that she has a very close relationship with Lambert, that Lambert is very helpful to her and

that if she has sex with Lambert that is a private matter.

Marianne has no plans to marry Lambert now or in the future. She hopes to be able to show Tiffany that her relationship with Lambert is normal and good, but if Tiffany continues to be upset when Lambert is around she will completely cut off Lambert seeing Tiffany or Tiffany seeing Lambert. If she had to choose between her children and Lambert, she would choose her children.

Marianne also feels that if Walter supported her, then Tiffany could accept her relationship with Lambert, and she suggests that Walter is upset with the relationship and that this, in turn, upsets Tiffany.

As to Austin, Marianne was not asked with respect to his attitude towards Lambert. Walter testified the boy was confused and was made to be in the company of Lambert and his children on occasions. Walter contends Austin needs a dominant male in his life.

Walter's drive for custody goes beyond his concern about the moral aspect. He dislikes the idea of Marianne injecting another man into the children's lives. Even if Marianne married, he would still want custody for this reason.

Marianne has expressed the view that Walter's desire for custody is not solely based on her relationship with Lambert, but is the result of a dispute they had with respect to the filing of their federal income tax in August 1983. Support for this view is found in the fact that Walter hired a private investigator to follow Marianne in May 1983, and this established the adultery. Walter also unilaterally reduced the agreed upon child support after April 1983, a fact not to his credit. He has paid child support as set by the Juvenile Court since September 1983.

As noted, the controlling issue relates to the relationship of Marianne with Lambert. This Court is

satisfied that each parent loves the children, each has a satisfactory home, each is interested in the activities of the children, and each can give adequate custodial care.

In considering the effect in law of the relationship, this Court turns to three relatively recent Virginia cases, Brown v. Brown, 218 Va. 196 (1977); Moore v. Moore, 212 Va. 153 (1971); and Clark v. Clark, 209 Va. 390 (1968).

In Clark, custody of a four year old boy was given to the father when there was a showing of past acts of adultery by the mother, one of which resulted in the birth of a half-brother who lived with the mother and the four year old whose custody was in issue. The Court, in a five to two decision reversing a lower court award of custody to the mother, commented on the mother's conduct as being a reflection of her moral character; the fact that the four year old was being raised with his illegitimate half-brother appears to be the reason custody was given to the father. The past acts of adultery occurred when the boy was less than 15 months old.

In Moore custody of girls eleven and seven was involved. Evidence failed to establish an adulterous relationship between the mother, who had custody, and her friend, though letters did show their love for each other and plans to marry when free to do so. The lower court felt that the evidence indicated the children would be subjected to an "immoral atmosphere" if the mother retained custody. The Supreme Court reversed the lower court and gave custody to the mother, pointing out that, while her relationship with the man was improper, it did not follow that she is not a good mother or that the children would be subjected to an immoral influence if she married the man.

In Brown, custody of two boys, seven and four, was transferred from the mother to the father by the trial court on evidence that the mother had an adulterous relationship which had been maintained in the home in which the children were living. The man had

been ordered out of the home before the custody issue was decided. While there was evidence that the father had a relationship "of lovers" with another woman, this relationship was "never obvious in the presence of the children." Both the mother and father planned to marry their friend when free to do so. The Supreme Court affirmed the award of custody to the father, pointing out:

> In all custody cases the controlling consideration is always the child's welfare and, in determining the best interest of the child, the Court must decide by considering all the facts, including what effect a nonmarital relationship by a parent has on the child. The moral climate in which children are to be raised is an important consideration for the Court in determining custody, and adultery is a reflection of a mother's moral values. An illicit relationship to which minor children are exposed cannot be condoned. Such a relationship must necessarily be given the most careful consideration in a custody proceeding. (218 Va. 199).

(This Court has also considered McCreery v. McCreery, 218 Va. 352, and, while there are suggestions of immoral conduct in that case, the award of custody is based on factors not found here.)

None of these cases is on all fours with this. In addition to factual differences, the custody award appealed from came at the time of divorce, and conduct after divorce was not involved.

As has been noted, this Court finds no substantial or significant difference between these parents with respect to their love for the children, the manner of their general care for the children and the physical adequacy of the home of each. And, as also has been noted, the bottom line for decision in each case is what is in the best interest of the child and its welfare.

On what this Court heard on April 2 at the ore tenus hearing, it has to conclude that the relationship between Marianne and Lambert has an adverse effect on the children. While that relationship is not presently adulterous, both Marianne and Lambert being divorced, it is illicit, as fornication still remains a misdemeanor, V.C. § 18.2-344, a class four misdemeanor just as is adultery. V.C. § 18.2-365.

This adverse effect is more apparent with respect to Tiffany than with Austin, but even Marianne acknowledges Tiffany's unhappiness with the relationship.

To repeat, Brown tells us that the Court must consider all the facts

> . . . including what effect a nonmarital relationship by a parent has on the child. The moral climate in which children are to be raised is an important consideration for the court in determining custody, and adultery is a reflection of a mother's moral values. An illicit relationship to which minor children are exposed cannot be condoned. Such a relationship must necessarily be given the most careful consideration in a custody proceeding. (218 Va. 199).

The continuing relationship between Marianne and Lambert, the adultery before the divorce, and the fact that the present relationship is shown to have an adverse effect on the children is sufficient to cause this Court to award the custody of Tiffany and Austin to their father.

While evidence as to the effect of the relationship on Austin is not as strong as with respect to Tiffany, this Court sees no reason to separate the children.

Counsel are requested to submit an order in accord, with visitation to Marianne.