ANNUNZIATA, Judge,
dissenting.
In my opinion, the trial judge’s statements make clear that, in awarding husband primary physical custody, he applied *437 different standards when evaluating the parties’ post-separation sexual conduct. Accordingly, I respectfully dissent.[4]
Viewed in the light most favorable to husband, the record shows that, during the period between the parties’ separation in December 1994 and the hearing in September 1996, husband was involved in a relationship with one woman. Husband’s relationship began in October 1995, and continued through the time of the hearing. Wife was involved in a relationship with a woman from January 1995 to May 1995, and in a relationship with another woman from May 1995 through the time of the hearing in September 1996.
The trial judge’s decision began with his statement that wife was in a “turmoil” over her sexual orientation. Immediately following this statement, the judge assessed wife’s sexual orientation and conduct:
She admits that she is experimenting.... Within her homosexual side of this experiment and turmoil, she has had two admitted lovers in the last eighteen months; one for four months, and one for over a year.
Speaking of it in the simplest manner, and not so much whether it is homosexual or heterosexual, this is promiscuity while still married. It shows a level of lack of control.
* * * * * *
I think Dr. Lane was correct in saying that both parents have good parenting skills. They both love their daughter, and their daughter loves both of them.
The judge then addressed husband’s conduct:
*438 On the other side, there is no evidence that Mr. Piatt has had any involvement in promiscuity, nor is there any evidence that he has any lack of parenting skills. He scored just about the same score she did on that grounds. There is no question that he has great love and care for his daughter, as does the mother. The mother clearly loves her daughter.
At this point, the judge made the statements quoted by the majority:
I have to balance these things out. And there is no easy answer, but I believe that father is better qualified at this point to be primary caretaker of the child. I believe there is more stability in his surroundings and in his home. There is support on both sides of the family, but there is probably a little bit more support on the side of the father. I guess they both have used — Both parents have used the support of these families over the years to help them.
The judge then awarded the parties joint legal custody and awarded husband primary physical custody.
The trial judge’s statements make clear that the factor he believed he had to “balance ... out” was the relative “promiscuity” of wife and husband; his lengthy discussion of the relative “promiscuity” of husband and wife provides the antecedent for the trial judge’s finding that husband had more “stability” and makes clear that this finding meant more stable sexual behavior.
The evidence shows, as wife contends, that the trial court treated wife’s sexual conduct differently from that of husband. First, the trial court’s finding that wife had engaged in “promiscuity while still married,” but that husband had not, is not supported by the evidence. XII The Oxford English Dictionary 613 (2d ed. 1989), defines “promiscuous” as “indiscriminate in sexual relations.” Similarly, The Oxford Dictionary and Thesaurus 1196 (1996), defines “promiscuous” as “having frequent and diverse sexual relationships, esp. transient ones.” Neither party’s relationships could reasonably be described from the record as “indiscriminate,” “frequent and diverse,” or “transient.” In fact, the relationship in which wife *439 was involved at the time of the hearing had lasted five months longer than husband’s relationship. Wife’s first relationship ended before her second relationship began. The record contains no evidence of other sexual relationships by either party. The court’s assignment of the label of “promiscuity” to wife’s two serial, monogamous relationships, to distinguish her conduct from that of husband, is not supported by the evidence.
The other facet of the court’s distinction between wife’s two relationships and husband’s relationship is that wife’s alleged promiscuity took place “while still married.” At the time of the hearing, however, both parties were still married. The court had not issued a decree of divorce. Furthermore, no evidence proved that either party had any extramarital relationship prior to their separation. Thus, the court’s distinction between the parties on this basis has no foundation in the evidence.
Second, the trial court’s consideration of evidence of wife’s sexual conduct, relative to that of husband, as a factor weighing against awarding her primary physical custody was erroneous because the record contains no evidence of any effect on the child. To the extent a finding of adverse effect on the child is implicit in the court’s decision, it is erroneous because no evidence of such an effect was introduced on this point. In Brown v. Brown, 218 Va. 196, 199, 237 S.E.2d 89, 91 (1977), the Supreme Court of Virginia established the standard for consideration of sexual conduct of a parent in child custody decisions:
In all custody cases the controlling consideration is always the child’s welfare and, in determining the best interests of the child, the court must decide by considering all the facts, including what effect a nonmarital relationship by a parent has on the child. The moral climate in which children are to be raised is an important consideration for the court in determining custody....
(Emphasis added).
As the majority concedes, this standard is applicable to both *440 heterosexual and homosexual sexual conduct.[5] The relevant inquiry, therefore, is whether the evidence supports a finding as to the “ ‘effect a nonmarital relationship by a parent has on the child.’ ” Brinkley v. Brinkley, 1 Va.App. 222, 224, 336 S.E.2d 901, 901 (1985) (quoting Brown, 218 Va. at 199, 237 S.E.2d at 91) (emphasis omitted).
The record contains no evidence that wife’s conduct, comprised of two same-sex relationships in eighteen months, had any effect on the parties’ child. At the time of the hearing, the child was less than four years old, and neither party introduced evidence that the child was aware of wife’s relationships. Husband testified that, to his knowledge, wife had never exposed the child to any intimate relationship with another woman. Indeed, the evidence affirmatively proved that no displays of affection of a sexual nature took place between wife and her partner in front of the child, that wife’s partner did not live at the wife’s home, and that wife had no plans to have her partner live in the home at any time. While the evidence showed that wife was “struggling” with her sexual identity, no evidence proved that the wife’s “struggle” affected her ability to parent the child. Indeed, the evidence is to the contrary. Not only did expert testimony establish that wife’s parenting skills were “demonstrably broader in scope ... than those of [husband],” the court found the wife’s *441 parenting skills were equal to those of the husband. The absence of evidence showing any effect of wife’s sexual conduct on the child supports wife’s contention that the trial judge applied different standards when evaluating the parties’ post-separation sexual conduct.
Finally, even if, as the majority states, the trial court “treated the parties’ post-separation sexual behavior [not as evidence of its adverse effect on the child but] as evidence supporting its conclusion that husband’s home was a more stable environment for the child,” I would reverse. To the extent the trial judge’s conclusion about the greater stability of husband’s “surroundings” and “home” was premised on the parties’ sexual conduct, his conclusion is erroneous as having been based on the application of different standards relating to this factor.
For the reasons outlined above, I would reverse and remand for a redetermination of custody of the child. See Dooley v. Dooley, 222 Va. 240, 247, 278 S.E.2d 865, 869 (1981) (“In view of our conclusion that the charge of adultery has not been proven, we must reverse the judgment of the trial court and remand the case ... for a redetermination of custody in light of our holding on the issue of adultery....”); Williams v. Williams, 24 Va.App. 778, 785, 485 S.E.2d 651, 654 (1997) (“Holding that Code § 20-124.2(B) requires a finding that harm or detriment to a child’s health or welfare would result without visitation, before visitation can be ordered over the unified objection of the child’s parents, we reverse and remand for reconsideration of visitation in accord with this opinion.”).

. The issue before us does not raise a question of the sufficiency of the evidence in support of the court’s custody award, as is suggested by the majority. This issue was not raised by either party. Instead, wife has limited her claim to "[wjhether the trial court erred when it did not consider the evidence of [husband’s] post-separation adulterous relationship in the same light as it considered [wife’s] post-separation adulterous relationship.” While some review of the evidence is necessary to understand the trial court’s reasoning, a sufficiency analysis ultimately does not answer the legal question which is before us.

. See, e.g., Bottoms v. Bottoms, 249 Va. 410, 420, 457 S.E.2d 102, 108 (1995) (finding a lesbian mother unfit because "there is proof in this case that the child has been harmed, at this young age, by the conditions under which he lives when with the mother for any extended period”); Roe v. Roe, 228 Va. 722, 728, 324 S.E.2d 691, 694 (1985) (changing custody under Brown standard from homosexual father to heterosexual mother because of “the impact of the father’s conduct upon the child”); Doe v. Doe, 222 Va. 736, 746, 284 S.E.2d 799, 805 (1981) (reversing the termination of a lesbian mother’s parental rights because there was no evidence that the mother's sexual conduct was "detrimental to the child's welfare”); Ford v. Ford, 14 Va.App. 551, 555, 419 S.E.2d 415, 418 (1992) (upholding custody award to cohabiting father because the child “was not exposed to the illicit nature of her father’s relationship” with his partner); Sutherland v. Sutherland, 14 Va.App. 42, 43, 414 S.E.2d 617, 618 (1992) (upholding custody award to adulterous mother because, unlike Brown, the evidence did not support "an adverse effect on at least one of the children”).