[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and. other relief brought to the judicial district of Waterbury. Many of the facts that give rise to this action are not in dispute. The plaintiff whose maiden name is Gail St. Mary and the defendant were married on December 1, 1939 in Waterbury, Connecticut. The plaintiff has resided continuously in the State of Connecticut for at least 12 months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are three minor children issue of this marriage, Zachary Duffany born September 21, 1991; Spencer Duff any born June 19, 1993; and Brandon Duffany born July 10, 1995. The plaintiff does not have any other minor children. Neither party has received state assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that the defendant's conduct is the cause of the breakdown of the marriage.
The plaintiff is 36 years old.
The plaintiff is in fair health. She has a family history of heart problems and diabetes. She has a heart murmur for which she is not presently receiving medical treatment. She has a back injury, as well as a neck injury. She is not under a doctor's care for her back. Her employment requires her to care for a brain injured adult as a private home aide. She is a high school graduate. The stipulation entered into between the parties dated September 19, 2000 provided in part that the plaintiff shall be entitled to obtain COBRA coverage at her cost as available through the defendant's employer. The court finds that the cost for that COBRA coverage for the plaintiff will be $152.37 per month.
CT Page 12886 The plaintiff has a secure job as a nurse's aide for a multi-handicapped adult male. Her gross weekly income is $512.33 less deductions. Her financial affidavit of September 18, 2000 lists as other sources of income: child support of $250.00 per week and "mortg." (cont.) of $100.00 per week. The $250.00 per week is the existing pendente lite support order and the $100.00 per week is the existing pendente lite order for the defendant to contribute to the mortgage payment. The plaintiff owns a 1993 Ford with a value of $3,000.00 and no loan balance. She also has $20.00 in her checking account. She does not have any other assets.
The defendant is 33 years old.
The defendant is a high school graduate and has attended college for 2 1/2 years.
The defendant is employed as a restaurant manager with gross weekly income of $1,057.00. He has been employed in that field for a number of years. He has $591.00 in his Webster Bank checking account. He has life insurance through his employment on his life in the face amount of $10,000.00. He has a 401K plan with a gross value of approximately $2,164.00. The defendant owns a 2000 Dodge Intrepid. That vehicle was purchased by him in January 2000 and costs close to $23,000.00. There is a loan balance due on that vehicle of $25,000.00. The Intrepid was purchased in part through a trade-in of another automobile that the parties owned together with the loan that the defendant obtained. The defendant also paid $1,000.00 down on the vehicle using his credit card.
The family home located at 186 Fanning Road, Waterbury, Connecticut, was purchased on December 21, 1989, for a purchase price of $109,500.00 in the name of the defendant only. It is encumbered by two separate mortgages. The first mortgage is a "growing equity mortgage" at an interest rate of 8.56%. This mortgage was used to purchase the family home and was in the face amount of $103,600.00. The final payment on the mortgage to pay it off in full is due July 1, 2006. The monthly payments on the mortgage for principal and interest through December 1, 2001, is $1,137.71. Thereafter, the monthly installment for principal and interest is $1,205.05. The second mortgage on the family home was in the face amount of $8,300.00, dated December 22, 1989. The final payment on that mortgage is due on January 1, 2020. On June 5, 1997, the defendant transferred the title to the family home into both his name and the plaintiff as part of reconciliation conditions she imposed.
The court finds that the fair market value of the family home is $85,000.00 and that it has a first mortgage with a balance of approximately $64,000.00. The approximate balance due on the second CT Page 12887 mortgage is $4,800.00. The monthly payment on the second mortgage is $49.77. The combined mortgage balance is approximately $68,800.00 and there is an equity in the home of approximately $16,200.00.
In the calendar year of 1996, the parties had gross wages of $40,778.00. The plaintiff had gross wages of $7,875.00. and the defendant had gross wages of $32,902.73. In the calendar year 1997, the parties had gross wages of $48,254.00. The plaintiff had approximately $15,000.00 in gross wages in 1997, and the defendant had approximately $33,800.00 in gross wages in 1997. In the calendar year of 1998, the parties had gross wages of $67,792.00. The plaintiff earned approximately $15,000.00 in 1998 and the defendant earned approximately $53,000.00 in 1998. In the calendar year of 1999, the parties has gross wages of $75,568.00. During the calendar year 1999, the plaintiff had gross wages of $28,832.25 and the defendant had gross wages of $46,735.45. The court finds that the defendant has a much greater earning capacity than the plaintiff.
The parties entered into a partial stipulation dated September 19, 2000 which the court has reviewed and finds to be fair and equitable. All the provisions of that stipulation will therefore be incorporated into the judgment file. That stipulation provided as follows:
THE PARTIES DO HEREBY AGREE:
 1. PENSION
 Defendant shall assign to plaintiff one-half (1A) of the value of any and all pension and profit sharing assets currently held by the defendant, specifically including those assets in The Briad Group, account #93307-1.
 2. LIFE INSURANCE
 Defendant shall provide and maintain life insurance on the life of the defendant naming the children as irrevocable beneficiaries thereof, in an amount up to $15,000.00 so long as available through his employer at no cost to defendant (currently $10,000.00).
 3. LIABILITIES
 Defendant shall make payment of the Fleet Bank credit card listed on the parties' respective financial affidavit and hold plaintiff harmless thereon. Defendant make payment of all other liabilities on his CT Page 12888 financial affidavit and hold the plaintiff thereon. Plaintiff shall make payment of all other liabilities on her financial affidavit and hold the defendant harmless thereon.
 4. HEALTH INS.
 Defendant shall maintain medical and dental for the benefit of the children as it is available to him through his employer. Plaintiff shall be entitled to obtain COBRA coverage1 at her cost, as available through defendant's employer.
 5. CUSTODY
 The parties shall have joint legal custody of the children with primary residence to be with the plaintiff.
 Any major decisions over the childrens' medical, educational and religious matters shall be discussed by plaintiff with the defendant, and, thirty (30) days written notice provided to defendant by plaintiff on the event of an unresolvable dispute between the parties, plaintiff shall have final say in the decision. Upon such decision, defendant may resort to court remedies if he feels the decision is not in the children's best interest.
 6. VISITATION
 Defendant shall have reasonable, liberal and flexible visitation with the children. There shall be an equal sharing of holiday and vacation time. Defendant shall provide plaintiff with thirty (30) days written notice of his vacation schedule. Defendant shall be entitled to two (2) weeks summer vacation (consecutive or nonconsecutive).
 The issue of overnight visitation with defendant while in the company of an unrelated female* shall be left for the court to decide. *Said issue to be decided as to both parties.
The issue of cohabitation regarding visitation restrictions is controlled by Gallo v. Gallo, 184 Conn. 36 (1981) where the court at CT Page 12889 pages 40-41-43, stated in part as follows:
 The majority approach has been to uphold visitation restrictions or custody changes where there has been some proof that the cohabitation has affected the child. DiStefano v. DiStefano, 60 App.Div.2d 976, 977, 401 N.Y.S.2d 636 (1978) (lesbian relationship; testimony that the mother's lover tried to alienate the children from their father; mother s visits must totally exclude her lover); In re Jane B, 85 Misc.2d 515, 518, 380 N.Y.S.2d 848 (1976) (child's behavior and below-ability school performance attributed to emotional distress over mother s sexual relationship with another woman; custody changed to father with no overnight visitation with mother); Commonwealth ex rel. Drum v. Drum, 263 Pa. Super. 248, 251, 397 A.2d 1192
(1979) (children's religious concern about wrongfulness of father's conduct; father's female companion to be absent during children's visits); Brown v. Brown, 218 Va. 196, 200, 237 S.E.2d 89
(1977) (testimony of adverse effect on children from mother's open adulterous relationship; custody transferred to father).
 Similar visitation restrictions have been denied
where the harm to the child is outweighed by other factors; People ex rel. Repetti v. Repetti, 50 App.Div.2d 913, 914, 377 N.Y.S.2d 571 (1975) (greater weight given to strong preference of teenagers to live with father and to the visitation needs of younger children who are living with the mother); or where there has been no showing of an adverse effect on the child. Sorace v. Sorace, 236 Pa. Super. 42, 344 A.2d 553 (1975). . . .
 This is not a case where no other evidence was presented concerning the child's welfare. . . . The child had experienced school difficulties, was repeating the first grade, and also was seeing a psychologist for therapy on a weekly basis. (Emphasis provided)
The plaintiff objects to the defendant having overnight visitation when he is with his female companion on moral grounds and religious grounds. The plaintiff, the defendant and the children are all practicing Catholics. There has been no credible evidence presented that the cohabitation by the defendant with a female companion has adversely CT Page 12890 affected the children. There has been no credible evidence presented that the children have expressed religious concerns about the wrongfulness of the father's conduct. There is no credible evidence that the children are experiencing school difficulties.
The parties are in dispute as to the calculation of the child support guidelines. The court finds that the plaintiff's gross weekly income is $513.00 and her net weekly income is $472.00. The court finds that the defendant's gross weekly income is $1,057.00 and his net weekly income is $764.00 for a combined net weekly income rounded to the nearest $10.00 of $1,240.00 and a basic support obligation of $417.00. The court further finds that the children's health insurance premium is $45.00 resulting in a total support obligation of $462.00. The defendant's share of the $462.00 is 61.61% or $235.00 and the plaintiff's share is 38.39% or $177.00 weekly. The health insurance adjustment of $45.00 results in the recommended child support for the defendant to pay to the plaintiff of $240.00 weekly. The defendant's share of unreimbursed medical and child care contribution is 42.39% and the plaintiff's share is 57.61%.
The parties are in dispute as to whether there is any arrearage due from the defendant to the plaintiff on the existing pendente lite order. The court finds that there is no arrearage due on the existing pendente lite order.
This court has considered the provisions of § 46b-82 regarding alimony, and has considered the provisions § 46b-31 (c) regarding the issue of property orders, and has considered the provisions of 46b-84 and the child support guidelines regarding the issue of support, and has considered the provisions of § 46b-56 regarding the issue of custody and visitation, and has considered the provisions of § 46b-62
regarding the issue of attorney's fees. The court enters the following orders:
 ORDERS A. By way of dissolution of marriage.
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. By way of alimony.
1. The defendant is to pay the plaintiff the sum of $30.00 per week. Alimony is to terminate upon the earliest of the following events: a) The death of the plaintiff; b) The death of the defendant; c) The remarriage of the plaintiff; d) July 1, 2006. The first mortgage will be paid off by CT Page 12891 that date and the plaintiff will therefore have less need for alimony from the defendant.
2. The provisions of § 46b-86 (a) and § 46b-86 (b) are applicable. The term of the alimony can not be extended.
 C. By way of pension orders, life insurance orders. liability orders, health insurance. custody and visitation.
1. The court finds that it has jurisdiction over the children under the Uniform Child Custody Jurisdiction Enforcement Act.
2. The stipulation entered into between the parties dated September 19, 2000 is found to be fair and equitable and all of its provisions are hereby incorporated into the judgment file.
3. The court does not impose any restriction upon the defendant for overnight visitation while in the company of an unrelated female.
D. Miscellaneous Property Orders.
1. The Dodge Intrepid is awarded to the defendant. He is to pay the loan balance and hold the plaintiff harmless.
2. The Webster Bank account shown on the defendant's financial affidavit will be awarded to the defendant.
3. The 1993 Ford shown on the plaintiff's financial shall be awarded to the plaintiff.
4. The Webster Bank checking account shown on the plaintiff's financial shall be awarded to the plaintiff.
5. The parties are in dispute regarding the award of the snowblower. The court awards the snowblower that is at the family residence to the plaintiff.
6. The defendant is ordered to quit claim to the plaintiff by November 30, 2000 all of his right, title and interest in the family home located at 186 Fanning Street, Waterbury, Connecticut. Simultaneously with the delivery of the quit claim deed, the plaintiff is to execute and deliver to the defendant a promissory note secured by a mortgage deed on the family residence in the face amount of $8,000.00. Said $8,000.00 represents approximately one-half of the equity in the family residence. The promissory note is to carry interest at the rate of 8% per annum. It is to be due and payable in full on the earliest of the following CT Page 12892 events: a) the sale of the residence; b) the commencement of a foreclosure action on the residence; c) August 1, 2006 or thirty days after the first mortgage is paid off, whichever date is sooner.
E. By way of support.
1. The defendant is ordered to pay to the plaintiff support in the amount of $240.00 per week and he is further ordered to pay 42.39% of unreimbursed medical expenses and qualifying day care costs after the first $100.00 payment is paid by the plaintiff.
2. An immediate wage execution is authorized.
3. The defendant has the right to claim the oldest child and the youngest child as exemptions for federal and state income tax purposes for each calendar year in which he is current for his alimony and support obligation at the end of such calendar year.
F. Attorney's Fees
1. No attorney's fees are awarded in favor of either party.
G. Miscellaneous Orders
1. The parties are to exchange copies of their federal and state income tax returns within thirty days after such returns have been filed for so long as there is an outstanding support order or an outstanding alimony order or any outstanding support or alimony arrearage.
2. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
AXELROD, J.