COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Clements and Senior Judge Willis
Argued at Alexandria, Virginia


CONNIE McGUIRE

                                                          MEMORANDUM OPINION* BY
v.       Record No. 0209-04-4                    JUDGE JEAN HARRISON CLEMENTS
                                                               OCTOBER 26, 2004
FREDERICK COUNTY
  DEPARTMENT OF SOCIAL SERVICES


                    FROM THE CIRCUIT COURT OF FREDERICK COUNTY
                                 John R. Prosser, Judge

          Gregory W. Bowman for appellant.

          Russell A. Fowler (Fowler Griffin Coyne Coyne & Patton, P.C., on
          brief), for appellee.

          (Michelle Morris Jones; Michelle Morris Jones, P.C., on brief),
          Guardian *ad litem* for the infant children.


        Connie McGuire (appellant) appeals from a decision of the Frederick County Circuit

Court terminating her residual parental rights to her two minor children.  On appeal, appellant

contends the trial court erred in finding the evidence was sufficient to terminate her residual

parental rights under Code § 16.1-283(B).[1]  Specifically, appellant argues that the Frederick

County Department of Social Services (DSS) failed to show by clear and convincing evidence

that (1) the termination of appellant's parental rights was in the best interests of the children; and

(2) it was not reasonably likely that the conditions resulting in the neglect and abuse could be

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Appellant also contends error premised on language found in Code § 16.1-283(C)(2).
However, the trial court did not make a finding under § 16.1-283(C).  Code § 16.1-283(B)
provides an independent basis for the termination of residual parental rights, and DSS prevailed
thereon.  We will not review a finding the trial court did not make.

substantially corrected or eliminated so as to allow the safe return of the children to appellant's custody within a reasonable period of time.[2]  Finding no error, we affirm.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I.  BACKGROUND

On appeal, we view the evidence in the light most favorable to DSS as the party prevailing below, and its evidence is afforded all reasonable inferences fairly deducible therefrom.  Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).  Where the record contains credible evidence in support of the lower court, we may not retry the facts or substitute another view of the facts for those of the trial court. Ferguson v. Stafford County Dep't of Social Servs., 14 Va. App. 333, 336, 417 S.E.2d 1, 2 (1992).  So viewed, the facts are as follows.

In September of 2000, appellant and Brian Norford were the custodial parents of two minor children (children), K.A.N., born September 5, 1995 and J.K.N., born November 25, 1996. On September 18, 2000, by an Emergency Removal Order unrelated to appellant's conduct, children were taken from their custodial parents and placed into the custody of DSS.  Children were returned to appellant's custody on September 22, 2000 under the terms of a protective order.  DSS again took custody of children on April 13, 2001, when appellant was arrested on a charge of driving under the influence with children in the vehicle.  On February 12, 2002, a juvenile and domestic relations district court found that children were abused and neglected.

---

[2] The natural father's residual parental rights also were terminated, but he is not a party to this appeal.

They were nevertheless returned to the custody of appellant and Norford under another protective order.

Sometime between February 26 and early May of 2002, appellant separated from Norford, and all were evicted from their residence. Appellant, with the assistance of the DSS, moved with children to the Salvation Army. On May 13, 2002, appellant was evicted from the Salvation Army, and DSS again took emergency custody of children. Another finding of abuse and neglect was entered against appellant on July 1, 2002.

By June of 2002 appellant had taken up residence in a one-bedroom apartment with Mark Smallwood. Appellant knew that Smallwood had a criminal history and a drinking problem, but thought he would be an "excellent influence" on her children when they were returned to her custody. At some point appellant told the senior social worker with DSS that she could not afford a suitable residence of her own for children as she was paying Smallwood's bills while he was away. Appellant lived in the one-bedroom apartment with Smallwood until December of 2002.

Foster care contracts dated July 1, 2002 and September 24, 2002 were signed by appellant, with the stated goal of returning children to appellant. The contract provisions were "objectives to be completed by [appellant] and the department in working towards the goal of reunification [of appellant with children]." Appellant contracted, among other things, to "obtain independent housing for her children by October 1, 2002 [and] anyone in the home over [the age of] 18 must have [Child Protective Services] and criminal background checks"; to gain stable employment; to secure a therapist at her own cost; to engage in no illegal activity; and, to "demonstrate appropriate interactions" while visiting with children.

Although it is not clear where she lived immediately after December of 2002, in April of 2003 appellant leased her own residence. She continued to be involved with Smallwood, who

was in and out of jail for alcohol-related probation violations through July 9, 2003. Call records from the Winchester Police Department for appellant's residence from July 1 through October of 2003 indicate police intervention was required at or near appellant's residence on ten separate occasions.

Appellant began seeing a psychiatrist in March of 2003, and began taking medication for her depression. Appellant saw a therapist briefly, but stopped soon after. She also saw a counselor for a single session. She completed a parenting workshop on June 2, 2003. She continued to draw Social Security disability payments for anxiety and depression, and she became employed in January of 2003. She was terminated from one job and took another around October 27, 2003.

A final foster care plan was filed by DSS on May 23, 2003. The goal of returning children to appellant's custody delineated in previous foster care plans was changed to permanent adoption, and the Juvenile and Domestic Relations District Court of Frederick County approved the plan on June 24, 2003. Appellant's residual parental rights were terminated by juvenile and domestic relations district court order on August 19, 2003. Appellant appealed the termination, and an *ore tenus* hearing was held in the Circuit Court of Frederick County on December 3, 2003.

Dr. Bernard J. Lewis, a licensed clinical psychologist, evaluated appellant on two separate occasions, most recently in October of 2002. Dr. Lewis testified that, psychologically, appellant presented

> as a [sic] individual who was very immature, very self-centered,
> very dependent on other people, especially men[,] in relationships.
> She had a significant degree of anxiety, [and] had been diagnosed
> at Northwestern Community Services as having an anxiety and
> panic disorder. She had some mild anti-social as well as some
> narcissistic personality characteristics.

Concerning appellant's skills as a parent, Lewis testified, "[appellant] displayed a shocking lack of understanding of basic parenting skills and techniques." Dr. Lewis concluded that

> [appellant] did not understand the special needs and problems of the children, that her ability to provide appropriate structure and discipline for the children would be very weak and that the children would be at a very high risk for the continuation and the worsening of any behavior and emotional problems if they were placed in her care and custody.

Dr. Milan R. Majarov, a licensed clinical psychologist, was part of a team of professionals that conducted evaluations of children between May 18, 2001 and October of 2002. The team included a psychiatrist, a pediatrician and an educational consultant. Dr. Majarov testified to the significant cognitive and personality deficits of both children, and opined that children's problems, "in great part[, are] a product of the abuse and neglect [children suffered] virtually all of their lives." He described both children as "fairly damaged children," though K.A.N. actually functioned academically at a slightly higher level than her deficits would indicate. In response to questioning by counsel for DSS, Dr. Majarov confirmed his previously expressed belief that the neglect or abuse suffered by children up to the time when he last saw them represented a "serious and substantial threat to their life, health or development." When questioned by the court, Dr. Majarov stated "it's not reasonably likely that the conditions which [sic] resulted in the neglect or abuse can be substantially corrected or eliminated so as to allow the children's safe return to their parents within a reasonable period of time."

Fidel Regan, a licensed clinical social worker, had served as counselor/therapist for children since October of 2001. Regan met with appellant five times between November 28, 2001 and January 7, 2002, and continued to have contact with appellant thereafter. Regan testified to stark differences between children's behavior before and after the final removal of children from the custody of appellant in May of 2002. Prior to final removal in May, J.K.N.'s play activity was "extremely violent," including cursing and screaming, foul language, kicking

- 5 -

and pretending to stab stuffed animals and talking about blood and killing, while K.A.N.'s behavior was very oppositional, confrontational and physically threatening. After the final removal in May of 2002, children "behaved beautifully." Although the violent play behavior continued in J.K.N., the violence had gone out of his play by October of 2002. J.K.N. was also toilet trained while in his foster care placement at almost six years old. The oppositional behavior of K.A.N. had decreased, and overall behavior had improved. In response to questioning, Regan opined that it was not reasonably likely that appellant could remedy the circumstances that required children to be placed in foster care.

Jill Falsetti, the Senior Social Worker in the Foster Care Adoption Unit at DSS, testified that she supervised almost every bi-weekly, and later monthly, visitation between appellant and children while in DSS custody. Falsetti described those visits as "chaotic" and requiring a high level of intervention to ensure the visits did not "get out of hand." During each visit, appellant was unable to demonstrate an ability to guide and control children and there was never a time when Falsetti did not have to intervene. The visits were characterized by "fits of rage," "temper tantrums" and other inappropriate behavior by children that appellant did not correct or properly address.

The guardian *ad litem* (GAL) for children observed them on several occasions, and reported "dramatic" improvement in the behavior of children during the time they were in foster care. Visits with appellant became more calm as well, and there was an obvious affection in children for appellant. However, based on her observations and discussions with care providers and others, GAL recommended continued foster care and adoption as a permanent goal.

At the conclusion of the hearing, the circuit court terminated appellant's residual parental rights pursuant to Code § 16.1-283(B). This appeal followed.

## II. STANDARD OF REVIEW AND RELEVANT LAW

When addressing matters that concern children, the paramount consideration of a trial court is the child's best interests. Logan, 13 Va. App. at 128, 409 S.E.2d at 463. See also Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990); Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230, 288 S.E.2d 405, 407-08 (1982). On appeal, we presume the trial court in making its decision has "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley, 9 Va. App. at 329, 387 S.E.2d at 796 (citing Brown v. Brown, 218 Va. 196, 200, 237 S.E.2d 89, 92 (1977)).

In assessing the sufficiency of the evidence to justify the decision of the trial court, we review the record in the light most favorable to the prevailing party below, here DSS. Ferguson, 14 Va. App. at 336, 417 S.E.2d at 2. When the trial court bases its decision on evidence heard *ore tenus*, we will not disturb it unless "plainly wrong or without evidence to support it." Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citing Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

Pursuant to § 16.1-283(B), the court may terminate the residual rights of a parent whose child has been neglected and placed in foster care based upon clear and convincing evidence that it is in the child's best interest, and that (1) "[t]he neglect . . . suffered by [the] child presented a serious and substantial threat to his life, health or development," Code § 16.1-283(B)(1), and that (2) "[i]t is not reasonably likely that the conditions which resulted in such neglect . . . can be substantially corrected or eliminated so as to allow the child's safe return to his parent . . . within a reasonable period of time." Code § 16.1-283(B)(2).

## III. ANALYSIS

Appellant points to demonstrations of children's reciprocated affection for appellant and to K.A.N.'s academic performance at a level higher than the cognitive deficits would indicate,

and argues that DSS failed to establish by clear and convincing evidence that the termination of appellant's residual parental rights was in children's best interests. We disagree. The record is replete with evidence that appellant failed to advance the best interests of children. It has been shown, *inter alia*, that appellant failed properly and consistently to house herself and children; that appellant had placed her children in danger by driving with them while intoxicated; that her boyfriend had a criminal record and a drinking problem; that children had been abused and neglected while in appellant's custody; and, that the cognitive health and development of children had been stunted by appellant's failures.

Appellant next argues that DSS failed to show by clear and convincing evidence that it was not reasonably likely that the conditions resulting in the neglect and abuse could be substantially corrected or eliminated so as to allow the safe return of children to appellant's custody within a reasonable period of time. We disagree. Appellant's depression and anxiety problems continued to render her unable properly to parent her children, and the professionals who observed children were unanimous in their opinion that the conditions necessitating removal were not reasonably soluble. Further, little progress was being made by appellant in her contract goals. Appellant remained unable to control her children during her visits with them. She did not obtain stable housing until April of 2003, and she remained closely involved with an alcoholic man who had a continuing criminal history. She did not continue to attend counseling and therapy sessions, and she was terminated from her job.

Thus, we cannot say that the trial court's findings by clear and convincing evidence that termination of appellant's residual parental rights was in the best interests of the children and that it is not reasonably likely that the conditions resulting in the neglect and abuse could be substantially corrected or eliminated so as to allow the safe return of children to appellant's

custody within a reasonable period of time as provided in Code § 16.1-283(B) were plainly

wrong or without evidence to support them.  Accordingly, we affirm the trial court's decision.

<u>Affirmed.</u>