COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Clements and Felton
Argued at Chesapeake, Virginia


SHOUNTELLE BRAZIER

MEMORANDUM OPINION[*] BY
v.        Record No. 0856-03-1             JUDGE WALTER S. FELTON, JR.
                                            DECEMBER 23, 2003
HAMPTON DEPARTMENT OF
 SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Wilford Taylor, Jr., Judge

M. Woodrow Griffin, Jr., for appellant.

Lesa J. Yeatts, Deputy City Attorney; Stephen J. Weisbrod,
Guardian *ad litem* for the child (City Attorney's Office;
Weisbrod & Phillps, on brief), for appellee.


Shountelle Brazier appeals the judgment of the Circuit Court of the City of Hampton

terminating his parental rights to his daughter pursuant to Code § 16.1-283(C).  He contends that the

trial court erred because (1) the evidence was insufficient to show that he was unable or unwilling,

within a reasonable time, to substantially remedy the conditions that led to his daughter's placement

in foster case; (2) that his incarceration prevented him from substantially remedying the conditions

that led to her being placed into foster care; and (3) that he did not have custody of his daughter

when she was taken from her mother and placed in foster care.  We affirm the judgment of the trial

court.

———————————
[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On appeal, we view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence shows that Brazier's daughter was born February 13, 1991 and that she has never been in Brazier's custody. She remained with her mother until August 29, 1996, when Child Protective Services removed her from her mother's care because of charges of child neglect and child endangerment. Brazier's daughter has been in foster care since she was removed from her mother. On August 9, 2000, the mother's parental rights were terminated.

Brazier, the child's father, was not living with his daughter at the time she was removed from her mother and placed in foster care. Brazier's whereabouts were unknown until January of 2000, when the Hampton Department of Social Services (the Department) located him in prison. At that time, he had not seen his daughter since she was four months old. By letter of January 10, 2000, the Department notified Brazier of its intent to institute proceedings to terminate his parental rights to his daughter.

On February 20, 2000, Brazier replied to the Department's letter and expressed his desire to be involved in his daughter's life. He stated that he did not want his parental rights terminated. Brazier advised the Department that he wanted his mother, Sonnerville Brazier, to have custody of his child. The Department instructed Brazier to contact it upon his release from prison in order to discuss the case and to arrange visitation with his daughter. Prior to his release from prison, Brazier corresponded with the Department and wrote letters to his daughter. His last letter to the Department was dated May 17, 2001. Responding to the petition for custody filed by Brazier's mother and by Brazier's pending release from prison, the Department amended

its goal from adoption to placement with a parent or relative. In July 2001, Brazier was released from prison.

On July 28, 2000, while Brazier was still incarcerated, Sonnerville Brazier, petitioner's mother, petitioned for custody of the child. On November 15, 2000, the Department completed a home study regarding the grandmother's suitability for custody. The home study report found that the grandmother did not demonstrate an ability to parent the child properly, and recommended that the child's custody continue with the Department. On November 11, 2001, the court approved a plan reinstating the goal of adoption for the child.

Following his release from prison in July 2001, Brazier failed to contact the Department to begin efforts to obtain custody of his daughter or to arrange for visitation with her. Brazier violated the terms of his parole within a year of his release and was returned to prison in June 2002. He is currently serving a five-year sentence for a new conviction for distribution of cocaine, in addition to serving a term of seven years of his previously suspended sentence for robbery. The child still visits with her grandmother and, if she is there when Brazier calls, he speaks with her.

The record shows that during the relevant period, Brazier's daughter was residing in a two-parent, agency-approved foster home. This foster care placement was her third since she came into foster care in 1996. With this placement, she showed dramatic improvement in her behavior.

The Juvenile and Domestic Relations District Court for the City of Hampton terminated Brazier's parental rights on September 11, 2002, pursuant to Code § 16.1-283(C). Brazier appealed the decision to the Circuit Court for the City of Hampton. On March 4, 2003, the circuit court concluded, after an *ore tenus* hearing, that "termination [was] in the best interests of the child . . . and that [Brazier] has been unwilling and unable to remedy substantially the

conditions which led to the foster care placement of the child . . . notwithstanding the reasonable and appropriate efforts of the [Department] to such end." See Code § 16.1-283(C)(2).

ANALYSIS

On appeal, Brazier contends that the evidence was insufficient to support the trial court's finding that termination of parental rights is in the child's best interests. He asserts that the court erred in finding that he, without good cause, had failed to remedy substantially the conditions that led to the child's foster-care placement. He further argues that his incarceration prevented his meeting the requirements to remedy the conditions surrounding his daughter's placement in foster care. He also argues that he should not be held responsible for the conditions that led to his daughter's removal from her mother's care because he was not present during that time period.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interest." Logan v. Fairfax County, 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991) (citing Toombs v. Lynchburg Div. Soc. Servs., 223 Va. 225, 230, 288 S.E.2d 405, 407-08 (1982)). We presume that the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Id. (citing Brown v. Brown, 218 Va. 196, 200, 237 S.E.2d 89, 92 (1977)). On review, the trial court's judgment, "'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)). "We review the record to determine whether there is clear and convincing evidence to support the determination of the trial court." Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986).

Pursuant to Code § 16.1-283(C), the court may terminate the residual parental rights of a parent of a child in foster care where it determines that the parent failed to substantially remedy the conditions that led to the child's commitment to foster care. Code § 16.1-283(C)(2).

Among the factors a court is required to consider in assessing the "best interest" of the child are:

> [T]he age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668-69, 347 S.E.2d 188, 191 (1986). Brazier's daughter continually resided in foster care for five years. There was noted improvement in her behavior while she was in foster care. There was the absence of any meaningful relationship between the child and her father.

Brazier failed to satisfy his initial obligation to communicate with the Department on his release from prison to formulate a plan to regain custody of his daughter and to arrange visitation with his daughter. He made no efforts to financially support her after his release. He made minimal efforts to renew contact with his daughter. Instead, he returned to his criminal activities, and in less than a year following his release, he was sent back to prison. The evidence established that Brazier, without good cause, failed "to make reasonable progress towards the elimination of the conditions which led to the child's foster care placement in accordance with [the parent's] obligations under and within the time limits or goals set forth in a foster care plan." Code § 16.1-283(C)(2); see Logan, 13 Va. App. at 130, 409 S.E.2d at 464.

While the burden is on the parent to meet the obligations and goals set by the court or by a foster care plan from the Department, the court must also consider the "prior efforts of such

agencies to rehabilitate the parent" before "the placement of the child in foster care." Code § 16.1-283(C)(2). When Brazier expressed his desire to be a part of his daughter's life, the Department changed its goal for her from adoption to placement with a parent or relative. The Department advised him in writing that, on his release from prison, he should contact the Department to arrange visitation with his daughter, and to formulate a plan to obtain custody of his daughter. Brazier, however, did not contact the Department after May 17, 2001. During the period following his release from prison in July 2001, Brazier made no arrangements for visitation with his daughter, nor did he make arrangements for her financial support.

The trial court determined that Brazier's failure to contact or cooperate with the Department as requested constituted clear and convincing evidence of his failure to make substantial progress towards ending his daughter's continuation in foster care. See Code § 16.1-283(C)(2). We cannot conclude that the trial court's decision to terminate Brazier's residual parental rights was plainly wrong or lacking credible evidence to support it.

Brazier also argues that his incarceration caused him to be unable to remedy, within a reasonable period of time, the conditions that resulted in his daughter's being placed in foster care.

> [W]hile long-term incarceration does not, per se, authorize termination of parental rights or negate the Department's obligation to provide services, it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination.

Ferguson v. Stafford DSS, 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992). Here, the record reflects that Brazier was incarcerated in January 2000 when the Department located him. After his release in July 2001, he returned to prison in June 2002 because of a new conviction for distribution of cocaine and for violating the terms of an earlier suspended sentence. While the

record is silent on how long Brazier had been incarcerated, it does demonstrate that he was absent for most of his daughter's life. During his release between July 2001 and June 2002, Brazier still made no meaningful efforts to regain custody of his child or otherwise exercise his parental rights and responsibilities.

Finally, Brazier argues that because he was not living with his daughter at the time she was removed from the custody of her mother, he could not remedy the conditions that led to her placement into foster care. His argument is without merit. Code § 16.1-283(C) requires merely that Brazier be willing or able "to remedy substantially the conditions which led to *or required continuation* of the child's foster care placement." Code § 16.1-283(C)(2) (emphasis added). Brazier was required to remedy or eliminate the need for his daughter's continued placement in foster care. The requirement concerned Brazier's conduct, and not the earlier neglect of the mother.

The trial court did not abuse its discretion by determining it was in the best interests of the child to terminate Brazier's residual parental rights. Brazier's parental rights were properly terminated under Code § 16.1-283(C)(2). Accordingly we affirm the judgment of the trial court.

<u>Affirmed.</u>