COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardner, Clements and McClanahan
Argued at Salem, Virginia


CRAIG BYRON JOHNSON

MEMORANDUM OPINION[*] BY
v.        Record No. 2050-04-3          JUDGE RUDOLPH BUMGARDNER, III
JUNE 7, 2005
SHARI LYNN JOHNSON


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

Monica Taylor Monday (Gentry Locke Rakes & Moore, on briefs),
for appellant.

Carol B. Gravitt (Gravitt & Gravitt, P.C., on brief), for appellee.

Lee Hendricks Turpin, Guardian *ad litem.*


Craig B. Johnson and Shari L. Johnson appeal from their final decree of divorce. The

husband asserts error in classifying and valuing certain assets, in ordering the sale of the marital

residence, and in awarding physical custody of the children. The wife asserts error in fixing

support arrearages. We conclude the trial court did not err and affirm.

The parties married in 1994, had children in 1995 and 1998, and separated May 28, 2000.

The wife filed for a divorce alleging cruelty and desertion June 1, 2000, and the husband filed a

cross-bill alleging desertion. The trial court heard evidence June 14-15, 2004 and closing

arguments on June 16. The trial court issued an opinion letter June 21, 2004, and entered the

final decree July 29, 2004.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The trial court granted the parties a divorce on the ground of living separate and apart for one year. It awarded the wife primary custody of the children and granted the husband liberal visitation. It classified the parties' assets and decreed equitable distribution of the marital estate. The trial court incorporated into the final decree the Partial Property Settlement Agreement which the parties executed March 17, 2003.

The proceedings were contentious with the trial court holding both parties in contempt. The husband failed repeatedly to comply with discovery orders, and the wife failed repeatedly to abide by visitation orders. Several changes of counsel of record contributed to extend the proceedings. Much of the testimony consisted of emotional attacks as the parties fought for physical custody of the two children. The wife maintained the husband was an abusive alcoholic and unfit, while the husband maintained the wife was an immoral thief and unfit.

While both parties submitted large binders containing financial documents, the data presented only provided a sketchy and incomplete record of their financial affairs. More complete financial records were not available to the wife because of the husband's continued resistance to discovery. The parties' recollections of their financial affairs were often internally inconsistent. While the parties succeeded in the business they created, they did not maintain careful or complete financial records. For example, they did not file personal and business tax returns and never made clear whether they conducted their business as a corporation or a proprietorship.

The husband expands into four separate arguments his claim that the trial court erred in classifying and valuing assets. Each separate argument rests on the claim that evidence did not support the factual findings. "In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each

case." Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 870 (1990). "A decision regarding equitable distribution . . . will not be reversed unless it is plainly wrong or without evidence to support it." Rahbaran v. Rahbaran, 26 Va. App. 195, 205, 494 S.E.2d 135, 139 (1997). We view the evidence in the light most favorable to the wife who prevailed in the trial court on issues of classification of property. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).

The parties began a discount dry cleaning business, CBJ Enterprise, during the marriage. It was the primary occupation of the parties and the source of their income. They initially invested $105,000. The trial court classified the cleaning business as marital property and valued it at $353,900. It found the husband had traced $80,000 of his separate property into the business and the wife had traced $20,000 of her separate property into it. Of the remaining balance, $253,900, the court allocated the husband 80% and the wife 20%.

The parties did not file payroll, business, or personal tax returns from 1997 through 2000. The trial court found that the parties owed $232,302 in delinquent taxes, penalties, and interest and that the liability was essentially attributable to their business. It allocated that debt in the same proportions that it allocated the business equity. Code § 20-107.3(C). The husband argues the settlement agreement controlled the allocation of the tax liability. He contends that the parties agreed to share equally the taxes imposed because they agreed to file joint returns.

The settlement agreement stated, "The parties acknowledge an obligation to file both personal and business, state and federal income tax returns for the calendar years 1997 through 2000, jointly." In it, the parties agreed to hire a certified public accountant to prepare and file the returns and to pay those expenses from a Charles Schwab account. They agreed "to pay any taxes owed, for years 1997-2000, including penalties and interest" from that account.

"Property settlement agreements are contracts and are subject to the same rules of construction that apply to the interpretation of contracts generally." Southerland v. Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995). When the agreement is unambiguous, we adhere to the plain meaning rule. Id. See also Shenk v. Shenk, 39 Va. App. 161, 173, 571 S.E.2d 896, 903 (2002). The agreement was clear: the parties would file returns, hire an accountant, and pay the expenses from a particular source. It did not address allocating the tax liability between the parties. While the parties might be jointly and severally liable to the taxing authorities, liability between themselves was a separate matter not addressed in their agreement. The agreement merely provided for filing the joint returns. It did not mandate an equal allocation of the resulting tax liability. The trial court did not err in allocating 80% of it to the husband.

The trial court classified as marital property two certificates of deposit issued by the American National Bank. The first was a six-month, $20,000 certificate that matured February 21, 2002. The second was a one-year, $10,000 certificate that matured March 19, 2002. The husband contends the certificates were not marital property because he purchased them after the separation. He maintains he used his separate funds to purchase the certificates and the wife failed to rebut the presumption that they were his separate property.

The record is nearly devoid of evidence that he purchased the certificates with separate funds. The only evidence of the source of the funds used to purchase the certificates was the husband's bare statement that he acquired them after the separation, but he could not explain how he earned the funds. The wife testified the husband's only income came from the marital business. She testified that during the marriage they would accumulate cash and purchase certificates.

"Property acquired after separation is presumed to be separate property unless the party claiming otherwise demonstrates that it was obtained with marital funds." Luczkovich v.

- 4 -

Luczkovich, 26 Va. App. 702, 712, 496 S.E.2d 157, 161-62 (1998).  See also Code

§ 20-107.3(A); Dietz v. Dietz, 17 Va. App. 203, 210, 436 S.E.2d 463, 468 (1993).  While the

evidence showed that the two certificates were purchased after the parties separated, nothing

indicated the funds they represented arose from post-separation income rather than from an

exchange or pledge of marital income.  Cf. Price v. Price, 4 Va. App. 224, 231, 355 S.E.2d 905,

909 (1987).

The evidence was in dispute, and it was the province of the trial court to assess the weight

and value of it.  "[T]he trier of fact ascertains a witness' credibility, determines the weight to be

given to their testimony, and has the discretion to accept or reject any of the witness' testimony."

Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*).

The husband also argues that a $20,000 gift to his parents was not marital property

because he made it after separation.  At trial he introduced a copy of a $40,000 check dated May

22, 2002, payable to his father, and bearing the notation, "store loan."  His argument is the same

as that made about the certificates of deposit; it assumes as established fact that which was

uncertain.  "A decision regarding equitable distribution rests within the sound discretion of the

trial court and will not be disturbed unless it is plainly wrong or without evidence to support it."

Holden v. Holden, 31 Va. App. 24, 26, 520 S.E.2d 842, 844 (1999).

The husband contends the evidence showed he gave each parent $10,000 when the

$20,000 certificate of deposit matured on February 21, 2002.[1]  In his April 22, 2002 deposition,

the husband stated he gave his father $20,000 after the parties separated.  At the June 15, 2004

---

[1] The husband also argues the trial court erred in including the $20,000 gift to his parents in the marital estate because it counted the same funds twice by including the $20,000 certificate in the marital estate.  The husband did not raise this issue in his assignments of error, and we will not consider it for the first time on appeal.  Rule 5A:18; Swann v. Commonwealth, 247 Va. 222, 229, 441 S.E.2d 195, 201 (1994) (appellant must present same argument on appeal as he raised at trial).

trial, he testified that within the last year, he issued two, $10,000 cashier's checks payable to his mother and father from a $25,000 certificate of deposit that had matured. There was a dearth of documentary evidence regarding the husband's post-separation investments and gifts to his parents and the source of those funds. On the credible facts in the record, we cannot say the trial court erred in finding the gifts came from marital assets.

The husband contends the trial court erred in including a $17,000 Global Investment Account in the marital estate. He argues that the evidence did not prove the fund existed but if it did, it failed to establish its current value. The wife testified that she gave the husband's father approximately $17,000 to invest on their behalf in 1996. The husband recalled the money was to be invested in "some sort of international Schwab fund." He claimed "they sent it back" before the parties separated, but he was not sure where the funds went. The wife claimed she saw a Charles Schwab statement showing an international mutual fund in the father's name that represented the parties' investment. The husband's father also recalled that the parties had given him money to invest on their behalf.

No documents traced the $17,000 investment. The husband contends the trial court's valuation was mere guesswork, but he, not the wife, had the financial records and the ability to account for its progression. "'Parties should not be allowed to benefit on review for their failure to produce evidence at trial . . . .  At some point we must "ring the curtain down."'" Bowers v. Bowers, 4 Va. App. 610, 617-18, 359 S.E.2d 546, 550 (1987) (citations omitted). There is no other credible evidence of the investment's value. On this record, indicating the husband could have produced records accounting for any gain or loss in the investment, the trial court did not err in including the original value in the marital estate.

The husband resided in the marital home after the separation. In their partial settlement agreement, the parties agreed "to have it sold" and to split the net proceeds. The house appraised

for $120,000 on December 9, 2003 subject to a $84,197.56 mortgage. Initially listed for $129,900, the parties reduced the price in August, and the realtor recommended a further reduction to $125,900 in November. At trial, the house had been on the market for a year, and the lack of a sale hindered concluding the case. The trial court reduced the offering price by $5,000, and ordered an auction if it did not sell at the reduced price within 90 days. The husband maintains the order contravened the settlement agreement.

The husband cannot complain of the trial court's action because he suggested an auction and acceded to the price reduction during his testimony.[2] See Asgari v. Asgari, 33 Va. App. 393, 403, 533 S.E.2d 643, 648 (2000) ("Husband will not be permitted to approbate and reprobate, ascribing error to an act by the trial court that comported with his representations."). In addition, the agreement was clear. The parties agreed to sell the property and to "leave for litigation any issues not capable of negotiated settlement." The parties could not agree on measures necessary to obtain a sale, and the trial court resolved the impasse. The decision was a proper exercise of judicial discretion.

Finally, the husband contends the trial court erred in awarding the wife custody of the children. When the parties separated, the wife moved with the children to Chesapeake where her parents lived. The wife met Mark Barker in September 2001, and he moved into her residence in October 2002. They married once the divorce was final. Despite the wife's post-separation adultery, the trial court awarded her physical custody of the children. The husband contends the wife's cohabitation harmed the children and made her unfit.

---

[2] In answers to interrogatories May 5, 2004, the husband denied that the fair market value was $125,900 and stated, "It is likely the fair market value cannot be determined without an auction." At trial, he agreed to reduce the sale price by $5,000 and to an auction noting that he might be the highest bidder. He replied that he "did not care" if the price was reduced to $120,000.

The wife's post-separation adultery and its effect on the children were among many factors the court considered in determining their best interest. That relationship concerned the trial court. During proceedings but before the two married, it ordered the boyfriend not to be present when the children were present. No evidence established or suggested that the children were adversely affected by the wife's cohabitation. "[E]vidence of adultery, without more, is an insufficient basis upon which to find that a parent is an unfit custodian of his or her child." Brinkley v. Brinkley, 1 Va. App. 222, 224, 336 S.E.2d 901, 902 (1985). Post-separation adultery, standing alone, does not require a finding that a parent is unfit. See Ford v. Ford, 14 Va. App. 551, 554-55, 419 S.E.2d 415, 417 (1992).

The guardian *ad litem* recommended that the children remain with the wife and noted that they both were doing well in school. The trial court considered the guardian's recommendation along with all the other evidence, and decided it was in the children's best interest to remain with the wife. The evidence permitted that finding.

The wife contends the trial court erred in not recalculating support arrearages. On July 10, 2001, the trial court awarded the wife monthly child support of $1,151.45 commencing May 1, 2001. It reserved judgment on accrued support from July 2000 through May 1, 2001 in the hopes that the parties could work out a settlement.

Two weeks later, the wife filed a motion to show cause for not paying support. The trial judge held a telephone conference and by order December 18, 2001 fixed the arrearages at $11,514.50. The husband paid the arrearage in full January 25, 2002. One month before trial, May 18, 2004, the wife filed a motion requesting the court to "[r]etroactively increase the *pendente lite* award of child support based on the defendant's amended tax returns and such other factors as the court may deem appropriate."

The wife's Exhibit 11F, entitled "Calculation of Arrears with Interest," showed a total arrearage of $19,372.84 for the period July 1, 2000 through May 1, 2001. The exhibit purported to prove that the correct support obligation was approximately $300 more per month than that awarded in 2001. The record contains nothing to explain the basis for the calculations or to explain the appropriateness of the rates of interest charged on delinquent sums. It contains no record of any arguments presented to justify a retroactive increase. The trial court ordered the husband to continue paying $1,151.45 per month in child support, found there was no support arrearage, and denied the wife's request.

The wife contends the trial court denied her request to revise arrearages as a sanction for violating the visitation orders. In a letter opinion dated June 21, 2004, the trial court initially denied the wife's claim "[a]s a sanction" for violating its visitation order. However, it rescinded that ruling in the final decree entered July 29, 2004. The record does not support the wife's allegation that the trial court denied child support arrearage as a sanction against her.

"'Decisions concerning child support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence.'" Rinaldi v. Dumsick, 32 Va. App. 330, 334, 528 S.E.2d 134, 136 (2000) (quoting Barnhill v. Brooks, 15 Va. App. 696, 699, 427 S.E.2d 209, 211 (1993)). The wife attempted to relitigate the arrearages established on November 9, 2001. Upon this record, we cannot say that the court erred in denying the request.

For these reasons, we affirm the trial court's rulings.

Affirmed.