**Alexandria**

CRYSTAL D. FORD

v.

DWIGHT DOUGLAS FORD

No. 2024-91-4

Decided June 2, 1992

552

COUNSEL

James Ray Cottrell (Gannon, Cottrell & Ward, on brief), for appellant.

Mark B. Sandground (Brian D. West; Irve Charles LeMoyne, Jr.; Sandground, Barondress & West, on brief), for appellee.

OPINION

**ELDER, J.**—Crystal D. Ford, appellant, appeals from a final decree of divorce entered September 13, 1991. On appeal, she asserts that the trial court erred: (1) in finding that the parties' child should be placed in joint custody where evidence showed that Dwight Douglas Ford, appellee, exposed the child to adulterous conduct; (2) in finding that appellee had invested more effort in caring for the child; (3) in not shifting sole custody to her when evidence showed that appellee misrepresented his custody plan to the court; and (4) in refusing to grant her sole custody of the child. For the reasons that follow, the judgment of the trial court is affirmed.

On November 26, 1983, Crystal D. Ford and Dwight Douglas Ford were married. On September 17, 1984, the parties' only child, Christina, was born. On August 7, 1988, the parties separated at appellee's request, and appellant moved out of the marital home. On September 15, 1990, appellee filed a bill of complaint for divorce against appellant. In his pleadings, appellee sought custody of Christina. In her answer and cross-bill, appellant also sought custody of Christina.

The parties accepted a custody arrangement proposed by a mediator for the period following the separation and prior to the final

decree of divorce. Under this plan, the child was picked up from school by her father, with whom she spent weekday evenings. Between 7:00 and 7:15 p.m., her mother picked her up and took her home, where she spent the night and the following morning before school. The child spent Saturday mornings with her mother, and spent Saturday and Sunday nights with her father.

Appellant worked as an attorney for a subcommittee of the United States House of Representatives, generally finishing each day at 6:00 p.m., though sometimes finding it necessary to work later. Appellee worked for Xerox Corporation and on occasion was required to travel.

During the trial, appellee testified to his involvement with Dr. Marciana Wilkerson, who testified that she and appellee were sleeping together. Appellee and Christina spent nights at the Wilkerson home on a regular basis. Together with Dr. Wilkerson and her eight-year-old son, they had gone on vacations and various social outings. There was evidence introduced that appellee and Dr. Wilkerson stayed in separate hotel rooms when they and Christina traveled together and otherwise made efforts to establish for Christina a nonthreatening platonic relationship.

Pursuant to a hearing for a final decree of divorce, permanent custody, and equitable distribution, the court ruled that the parties should have joint legal and shared physical custody of Christina, but that Christina should spend weekdays and nights with her father and weekends with her mother.

Following the trial, Christina left with her mother for an extended stay in Texas. While she was gone, her father moved into the Wilkerson home. According to appellee, he made the decision to move pursuant to consultation with a child psychiatrist who felt that to wait until the school year had started would unnecessarily increase the potential for stress to Christina. When Christina returned from Texas and, pursuant to the court's ruling, to the custody of her father, she also stayed in the Wilkerson home. Separate rooms were maintained in the Wilkerson home for both appellee and Christina.

Pursuant to a motion for reconsideration of the court's ruling, a hearing was held September 13, 1991, at which appellant presented evidence concerning events that had transpired after the

court's initial ruling. The court entered a final decree of divorce reflecting all of the terms of its earlier ruling save one: the court held that appellant should be allowed to choose what school Christina would attend for the academic year 1992-93.

■ Appellant first asserts that the trial court erred in placing Christina in joint custody when evidence showed that the father exposed the minor child to his adulterous conduct. As an initial matter, it is to be noted that the standard of review of the trial court's custody determination is high.

> Under familiar principles, we review the evidence in the light most favorable to . . . the prevailing party below. . . . The judgment of a trial court sitting in equity, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.

*Peple v. Peple*, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988) (citations omitted). On this record, we affirm the ruling of the trial court.

Appellant contends that, because appellee moved himself and his daughter into the home of a woman with whom he was having an adulterous relationship, appellee became an unfit custodian of his daughter. As a result, the trial court erred in awarding the parties joint custody.

■ As this Court noted in *Brinkley v. Brinkley*, 1 Va. App. 222, 336 S.E.2d 901 (1985), the mere fact of adultery, "without more, is an insufficient basis upon which to find that a parent is an unfit custodian of his or her child." *Id.* at 224, 336 S.E.2d at 902. Nonetheless, when determining the child's best interests, "the extent to which the child is exposed to an illicit relationship must be given the 'most careful consideration' in a custody proceeding." *Id.* (citing *Brown v. Brown*, 218 Va. 196, 237 S.E.2d 89 (1977)).

■ In *Brown v. Brown*, 218 Va. 196, 237 S.E.2d 89 (1977), the Supreme Court stated that "[a]n illicit relationship to which minor children are exposed cannot be condoned." *Id.* at 199, 237 S.E.2d at 91. Here, appellee moved with his child into the home of a woman with whom he had an adulterous relationship. However, this fact alone does not determine to what extent, if any, Christina was exposed to the intimate nature of the relationship

between her father and Dr. Wilkerson. In this case, neither the judgment of the trial court nor the court's affirmance of that judgment "condones" appellee's adulterous behavior. As this Court stated in *Sutherland v. Sutherland*, 14 Va. App. 42, 43, 414 S.E.2d 617, 618 (1992), *Brown* did not establish a per se rule prohibiting awarding custody to a parent involved in an adulterous relationship; instead, *Brown* stands for the principle that the controlling consideration is always the child's welfare and the best interests of the child.

The facts of the present case can be distinguished from those before the Court in *Brown*. Here, no evidence was introduced that Christina was exposed to the illicit nature of her father's relationship with Dr. Wilkerson. In fact, evidence was introduced that proved that appellee and Dr. Wilkerson made every effort to establish for Christina a nonthreatening, platonic relationship. For example, the couple maintained separate bedrooms in Dr. Wilkerson's home and stayed in separate hotel rooms when they and Christina travelled together.

As this Court noted in *Brinkley*, "adultery is a reflection of a parent's moral values which should be considered in evaluating the moral climate in which a child is to be reared." *Brinkley*, 1 Va. App. at 224, 336 S.E.2d at 902 (citing *Brown*, 218 Va. 196, 237 S.E.2d 89). Here, appellee and Dr. Wilkerson not only went to great lengths to shield Christina from their adultery, they were also open with her about their ultimate intentions with regard to one another, telling her that they intended to marry.

Following extensive and detailed testimony by the various witnesses, the trial court was in effect asked to evaluate the moral climate of the home into which Christina had moved with her father. Especially in light of the strict standard that governs this Court's review of the trial court's final determinations, we do not find that the trial court abused its discretion when it awarded the parties joint custody.

We reject appellant's contention that *Roe v. Roe*, 228 Va. 722, 324 S.E.2d 691 (1985), controls determination of this issue. In *Roe*, the Supreme Court ruled that a father's homosexual live-in relationship rendered him unfit to be a custodian of his daughter. The case is factually distinguishable from that now before us. First, *Roe* involved a relationship between two homosexuals,

which the Virginia Supreme Court held imposed on the child "an intolerable burden . . . by reason of the social condemnation attached to" the conditions to which she was daily exposed. *Id.* at 728, 324 S.E.2d at 694. Just as significant, the father in *Roe* apparently made no attempt to shield his daughter from the illicit nature of his relationship. Instead, he openly shared his lover's bed and kissed and embraced him in front of his daughter. *Id.* at 724, 324 S.E.2d at 692. Because the standard governing our review of this issue is "the extent to which the child is exposed to an illicit relationship," *Brinkley*, 1 Va. App. at 224, 336 S.E.2d at 902, *Roe* does not control our decision.

Appellant further asserts that the trial court erred in finding that appellee had invested more effort in caring for Christina. Appellant, in effect, asks this Court to review the myriad facts of this case in order to conclude, without the benefit of first hand observation of the parties' testimony, that appellee did not, in fact, invest more effort in Christina's care than did appellant. If any credible evidence supports the trial court's determination, its decision must be upheld. Here, while there was much evidence as to the mother's love and care for her daughter, and while the trial court took pains not to denigrate the mother's devotion to her daughter, there was much evidence to indicate that the father was also a devoted and caring parent. Moreover, there was evidence in the record that the father had gone to some lengths to ensure that he would be consistently available to his daughter, including taking a job that involved a $17,000 a year salary cut but also much less travel than his previous position. Because credible evidence supports the determination of the trial court, its judgment must be upheld on appeal.

Appellant also contends that the court erred in not shifting sole custody to the mother when the evidence showed that the father misrepresented his custody plan to the court. Appellant argues that her assertion that appellee misrepresented his custody plan to the trial court in the July proceedings is borne out by subsequent events. However, in the hearing pursuant to appellant's motion to reconsider, the trial court had an opportunity to hear testimony concerning those subsequent events. Included in this testimony were appellee's explanations for why he acted as he did following the July proceedings. Appellant has pointed to nothing to substantiate her assertion that the trial court abused its discretion in ac-

cepting appellee's explanations and in issuing a final decree that adopted the initial decree almost in its entirety.

Finally, appellant contends that the trial court erred in refusing to grant the mother sole custody of the child. Appellant is apparently suggesting that the trial court failed to give adequate consideration to the statutory factors set out in Code § 20-107.2, including: the age and physical and mental condition of the child; the age and physical and mental condition of each parent; the relationship between each parent and the child; the needs of the child; the role each parent has played, and will in the future play, in the child's upbringing and care; and all other relevant factors necessary to a consideration of the child's best interests.

In *Robinson v. Robinson*, 5 Va. App. 222, 361 S.E.2d 356 (1987), this Court held that, with respect to decrees fixing the visitation rights of parents with their children, a trial court must consider the specifically enumerated factors set out in Code § 20-107.2(1) (now Code § 20-107.2). Because the record is replete with evidence addressing all of the statutory factors, we reject appellant's final contention.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*

Moon, J., and Willis, J., concurred.