COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Frank and Humphreys
Argued at Chesapeake, Virginia


ROSANNE D'ERAMO BELL TIGNOR

                                         MEMORANDUM OPINION[*] BY
v.    Record No. 2995-00-1            JUDGE LARRY G. ELDER
                                            JUNE 26, 2001
MATTHEW MORGAN TIGNOR


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                      Frederick B. Lowe, Judge

            Jerrold G. Weinberg (Cecelia Ann Weschler;
            Weinberg & Stein, on briefs), for appellant.

            Henry M. Schwan for appellee.


     Rosanne D'Eramo Bell Tignor (mother) appeals from an order

of the Circuit Court of Virginia Beach (trial court) holding

that she and her former husband, Matthew Morgan Tignor (father),

should have joint legal and physical custody of their two minor

children, with each party "having physical custody during

alternating weeks from 6:00 p.m. Sunday to 6:00 p.m. Sunday."

Mother contends the trial court erroneously (1) failed to

consider the required statutory factors; (2) failed to

communicate to the parties the basis for its decision; (3)

concluded that a rotating physical custody scheme was in the

children's best interest; and (4) failed to give any weight to

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

evidence that father routinely involved the children in his numerous post-separation relationships with women.  We hold that the trial court did, in fact, consider the statutory factors and communicated the basis for its decision by adopting the commissioner's report.  We also hold that the evidence, viewed in the light most favorable to father, supported the trial court's implicit conclusion that father's alleged post-separation relationships had no detrimental impact on the children.  Finally, under this same standard, we hold the evidence supported the conclusion that an award of joint physical custody was in the best interest of the children.  Therefore, we affirm the award of custody.

## I.

### BACKGROUND

When the parties married in 1990, father was working as a doctor and mother as a registered nurse.  The parties had a son in 1990 and a daughter in 1991, and by agreement, mother stopped working to care for the children.  The parties separated in November 1996.  In a <u>pendente</u> <u>lite</u> decree entered March 7, 1997, the trial court ordered that "each party shall have custody of the children 50% of the time" and that "the parties shall cooperate to achieve this."  In compliance with the <u>pendente</u> <u>lite</u> decree, the children spent Monday and Tuesday with mother, Wednesday and Thursday with father, and Friday, Saturday and Sunday with mother, and they reversed the pattern during the

-

second week, spending Monday and Tuesday with father, Wednesday and Thursday with mother, and Friday, Saturday and Sunday with father.

The trial court directed that the parties and their children undergo psychological testing and evaluation, and the parties agreed to have those evaluations performed by Robert J. Seltzer, a licensed clinical psychologist. The trial court referred the custody matter to a commissioner in chancery, who heard evidence during multiple hearings from February to May 1999.

The parties presented conflicting expert testimony regarding the condition of the children at the time of the hearings and the custody arrangement that would be in the children's best interest. After hearing the parties' evidence, the commissioner found that both parents were fit and had the children's best interests in mind. He concluded, however, that the parties were unable to communicate effectively with each other and expressed concern over their ability "to actively support the children's contact and relationship with the other parent and . . . to cooperate in matters affecting the children." As a result, he recommended entry of "a very specific order with respect to . . . parenting time, which can be strictly enforced." Based on a finding that "the children are doing well now, in spite of their parents' ongoing feud," he recommended that joint legal and physical custody continue, with

-

each of the parties having physical custody during alternating weeks from 6:00 p.m. Sunday to 6:00 p.m. Sunday, with an exception for Christmas Eve and Christmas Day.

Mother excepted to the commissioner's custody recommendation. The trial court heard argument on the exceptions on June 30, 2000, but a transcript of that hearing is not a part of the record on appeal. By letter opinion of October 25, 2000, the trial court overruled mother's exceptions to the commissioner's custody recommendation. In the final decree, entered December 8, 2000, the trial court indicated that it considered "all applicable law [and] all factors required by law," and it "confirmed and approved" the commissioner's report with respect to custody of the parties' children, repeating the terms of custody in the final decree. Mother endorsed the decree "SEEN AND EXCEPTED TO" without setting forth any specific basis for objection.

## II.

### ANALYSIS

Code §§ 20-107.2 and 20-124.3 allow a court to make a decree concerning the custody of minor children. "[T]he controlling consideration is always the [children's] welfare . . . ." Sutherland v. Sutherland, 14 Va. App. 42, 43, 414 S.E.2d 617, 618 (1992). In determining what custodial arrangement serves the best interests of a child, the court shall consider the factors enumerated in Code § 20-124.3.

-

"It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to [a witness'] testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc).  These principles apply to the testimony of both lay and expert witnesses.  Id. at 387-89, 488 S.E.2d at 668-69.

On appeal, we view the evidence in the light most favorable to the prevailing party.  Brown v. Burch, 30 Va. App. 670, 681, 519 S.E.2d 403, 408-09 (1999).  When a circuit court appoints a commissioner in chancery to assist in a custody determination and adopts the commissioner's findings and recommendations, those "findings and recommendations . . . become those of the supervising court and are due considerable deference on appeal." Haase v. Haase, 20 Va. App. 671, 679, 460 S.E.2d 585, 588 (1995).  "[A] decree which approves a commissioner's report will be affirmed unless plainly wrong . . . ." Hill v. Hill, 227 Va. 569, 577, 318 S.E.2d 292, 296 (1984).

A.

COURT'S CONSIDERATION OF STATUTORY FACTORS
AND COMMUNICATION OF BASIS FOR DECISION

Mother contends the trial court erroneously failed both to consider the factors enumerated in Code § 20-124.3 in determining custody and to communicate to the parties the basis for its decision as expressly required by that same code

-

section.  We hold the trial court's final decree satisfied these requirements by stating specifically that the trial court considered "all factors required by law" and adopting the report of the commissioner which explained the basis for the award of joint physical custody.

Prior to July 1, 1999, Code § 20-124.3 required a trial court determining child custody to examine all factors enumerated therein but did not require that specific findings be made based upon those factors.  As we explained numerous times in reference to that version of the statute, "the court is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995) (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)).  "As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

Effective July 1, 1999, the General Assembly amended Code § 20-124.3 to provide that "[t]he judge shall communicate to the parties the basis of the [custody] decision either orally or in writing."  See 1999 Va. Acts ch. 634.  Thus, although we need not address the precise parameters of the communication required, we note the statute now entitles the parties to some

-

explanation of the basis for the court's decision.  Here, the trial court stated in the final decree that it considered "all factors required by law" in rendering its decision, and it adopted the portion of the commissioner's report in which the commissioner stated the basis for his custody recommendation, thereby satisfying the requirements of the statute.

For these reasons, we hold that mother did not establish the trial court erroneously failed to consider the statutory factors or to communicate to the parties the basis for its custody ruling.

B.

JOINT PHYSICAL CUSTODY WITH WEEKLY SHIFTING OF RESIDENCE

Mother contends that the Virginia Supreme Court has expressly rejected the type of shifting custody arrangement ordered here and, even if it has not, that the trial court's approval of such a custody arrangement was plainly wrong under the facts of this case.  We reject both contentions and hold the trial court's conclusion that a joint physical custody arrangement which required the parties' children to live with mother and then father during alternating weeks was not plainly wrong.

Mother argues first that the Virginia Supreme Court voiced its wholesale rejection of such a custody scheme in Brooks v. Brooks, 201 Va. 731, 113 S.E.2d 872 (1960), in which a seven-year-old boy spent four nights each week with one parent

-

and three nights with the other parent.  The Court held that "this frequent shifting of the custody of the child between the parents for short periods of time will obviously be detrimental to his welfare" because it "will result in his having no real home and no permanent environment and associations."  Id. at 744, 113 S.E.2d at 874.

We think it important to note, however, that when the Supreme Court decided Brooks more than forty years ago, the statutes governing custody did not expressly provide for the exercise of joint physical custody,[1] see 1954 Va. Acts ch. 234,

---

[1] Although no statute expressly provided for joint physical custody, the Supreme Court sanctioned the award of what it called "divided custody" both before and after its decision in Brooks.  In Mullen v. Mullen, 188 Va. 259, 49 S.E.2d 349 (1948), which involved divorced parents residing in different states, the Court observed:

> While there are certain disadvantages [in dividing or alternating custody], there are also important advantages and benefits.  It gives the child the experience of two separate homes.  The child is entitled to the love, advice, and training of both her father and her mother.  Frequent associations, contact, and friendly relations with both of her parents will protect her future welfare if one of her parents should die.  It gives recognition to the rights of parents who have performed obligations as parents . . . provided such right be exercised for the welfare of the child.

Id. at 272-73, 49 S.E.2d at 355.  For those reasons, it approved an award of custody to the child's mother during the school year and to her father for a portion of the summer.  Id. at 274, 49 S.E.2d at 356.
The Court applied its reasoning in Mullen to approve similar results in Andrews v. Geyer, 200 Va. 107, 112-13, 104 S.E.2d 747, 751-52 (1958), Semmes v. Semmes, 201 Va. 117,

-

and a common-law inference existed favoring an award of custody of a child of tender years to its mother, see Visikides v. Derr, 3 Va. App. 69, 72, 348 S.E.2d 40, 42 (1986).  Since that time, the legislature has provided that no such presumption or inference favors either party.  See id.  It also has provided that a court may award joint legal and/or physical custody and "shall assure minor children of frequent and continuing contact with both parents, when appropriate, and encourage parents to share in the responsibilities of rearing their children," Code § 20-124.2(B); see Code § 20-124.1; see also 1988 Va. Acts ch. 794 (adding first statutory reference to joint custody, in § 20-107.2), thereby emphasizing "the importance [it] attaches to joint custody arrangements," Burch, 30 Va. App. at 688, 519 S.E.2d at 412 (focusing on joint legal rather than physical custody).  Thus, viewed in the context of the current statutory scheme, the holding in Brooks does not require the automatic rejection of the shifting physical custody arrangement at issue here, and we hold the trial court was not plainly wrong in concluding that shifting physical custody was in the children's best interest under the facts of this case.

Despite mother's arguments to the contrary, a careful reading of the record establishes that father's expert, psychiatrist Dan Darby, endorsed a custody arrangement whereby

124-25, 109 S.E.2d 545, 550 (1959), and Crounse v. Crounse, 207 Va. 524, 532-33, 151 S.E.2d 412, 418 (1966).

-

the parties would share physical custody, and the evidence, viewed in the light most favorable to father, supports this conclusion. The evidence indicated that, despite experiencing problems when their parents first separated, the children were thriving under the joint physical custody arrangement in effect at the time of the commissioner's hearing. Dr. Darby had full access to the records of Leeann Lane, a licensed clinical social worker who worked in his office and counseled both children. Although Lane disagreed with Dr. Darby's opinion regarding custody, her records confirmed that the children were "coping well with current stressors" and that "the availability of both parents is contributing to their well-being." Joan Eckert, the principal of the children's elementary school, testified to the marked improvement of the children, particularly the parties' son, under the current custody scheme.

Dr. Darby opined that providing father with at least joint physical custody was the only way to assure the continued unfettered access of both parents to the children, which access he testified was in their best interest. He opined that if mother had primary physical custody, her emotional volatility was likely to interfere with this unfettered access to the detriment of the children, whereas father had demonstrated an ability to keep his emotions in check in order to foster the children's relationship with their mother and to further their best interests.

-

Scott Sautter, a clinical psychologist, called Dr. Seltzer's test results into question, based both on Dr. Seltzer's selection of tests and his interpretation of the resulting data, and Dr. Sautter agreed with Dr. Darby's conclusion that a continuation of joint physical custody with an equal division of time was appropriate under the facts of this case. Although father routinely employed a nanny, the evidence established that the nanny generally was present only when father also was present, and Dr. Sautter testified that father's use of a nanny "who is caring and well-trained" would not offset the beneficial balance otherwise provided by a joint physical custody arrangement.

The custody arrangement in effect at the time of the commissioner's hearings involved a shift in custody every two or three days, but Dr. Seltzer testified that the parties' son in particular had some difficulty adjusting to a mid-week change in residence. Thus, the evidence supported the commissioner's recommendation that it would be in the best interests of the children to continue the shared physical custody arrangement but to change residences only on the weekend rather than during the school week.

The finder of fact, confronted with conflicting expert opinions regarding which custody arrangement was in the best interest of the children, was entitled to conclude that Dr. Darby's opinion, supported by Dr. Sautter's, was better reasoned

-

than the opinions of Dr. Seltzer and Leeann Lane. Therefore, we hold the trial court did not abuse its discretion in adopting the commissioner's recommendation, based on the testimony of those experts, to award the parties joint physical custody during alternating weeks, with the shift in custody to occur each Sunday evening.

## C.

### FATHER'S OPPOSITE-SEX RELATIONSHIPS

While "[a]n illicit relationship to which minor children are exposed cannot be condoned," Brown v. Brown, 218 Va. 196, 199, 237 S.E.2d 89, 91 (1977), there is not a "per se rule prohibiting awarding custody to a parent involved in an adulterous relationship," Ford v. Ford, 14 Va. App. 551, 555, 419 S.E.2d 415, 417 (1992). "[I]n determining the best interest of the child, the court must decide by considering all the facts, including what effect a nonmarital relationship by a parent has on the child." Brown, 218 Va. at 199, 237 S.E.2d at 91.

Mother contends the trial court erred in failing to give any weight to uncontroverted evidence that father regularly involved the children in his promiscuous post-separation relationships with numerous paramours. We disagree and hold that the evidence, viewed in the light most favorable to father, supports the trial court's implicit conclusion that any impact

-

father's nonmarital relationships had on the children was insufficient to prevent him from obtaining joint custody.

Mother attempted to offer evidence of father's extra-marital involvement with over fifteen different women both before and after the parties' separation in November 1996 and before the commissioner's hearings in 1999. Although the evidence supports a finding that seven of these women met the parties' children, no evidence established that father engaged in inappropriate behavior with these women in the presence of the children or that the children expressed any concerns over the nature of father's relationships with these women.

The evidence did not establish that B.P., C.W., D.M. or S.D. met the children on more that one or two occasions each. No evidence indicates that father and any of these women engaged in any inappropriate behavior in the presence of the children or that the children knew the adults were anything other than friends.

M.G. spent time at father's home in the presence of the children, shared meals and accompanied them on various outings, but again, no evidence indicated that M.G. and father engaged in any inappropriate behavior in the presence of the children.

J.H. and S.J. traveled with father and the parties' children on separate overnight trips, with J.H. accompanying them on a trip to Mount Rushmore and S.J. and her son accompanying them on a trip to New York. However, no evidence

-

established what the sleeping arrangements were on the trip to New York, and J.H. testified that, on the trip to Mount Rushmore, she shared accommodations with only the parties' daughter. Thus, again, the record contains no indication that father and either of these women engaged in any inappropriate behavior in the presence of the children.

Mother offered testimony from Dr. Seltzer that separated parents "don't want to do things that show [the] children they can treat marriage vows lightly [by] ignor[ing] the fact that [the parents] are still married" and that this principle "puts [father's trips with women and the children] on shaky ground as a bad example for the children," even if the adults were not sleeping together. However, the trial court was not required to accept Seltzer's testimony about the impact of these trips on the children. See, e.g., Street, 25 Va. App. at 387-89, 488 S.E.2d at 668-69. Further, even assuming that the trial court accepted this evidence and that father was dating S.J. and J.H. at the time of the respective trips, no evidence indicates that the children were aware of this fact. Finally, even if they had been aware of this fact, it would not compel a finding that awarding joint custody of the children to both parents was not in their best interest.

Thus, the evidence, viewed in the light most favorable to father, did not establish that the children were being exposed to father's allegedly illicit relationships in such a way that

-

the exposure rendered the trial court's custody determination plainly wrong.  See, e.g., Ford, 14 Va. App. at 555, 419 S.E.2d at 417 (in affirming award of joint custody, noting that father and lover whose home he shared maintained separate bedrooms and stayed in separate hotel rooms when they and the child traveled together).

### III.

For these reasons, we hold the evidence supported the conclusion that an award of joint physical custody was in the best interest of the children.  Therefore, we affirm the award of custody.

Affirmed.

-