COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Annunziata
Argued by teleconference


A.O.V.

v.      Record No. 0219-06-4

J.R.V.                                            MEMORANDUM OPINION* BY
                                                 JUDGE JAMES W. BENTON, JR.
J.R.V.                                                 FEBRUARY 27, 2007

v.      Record No. 0220-06-4

A.O.V.


                  FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                              John E. Kloch, Judge

                  James Ray Cottrell (Kyle F. Bartol; John K. Cottrell; Benjamin W.
                  Bull; Glen Lavy; Dale Schowengerdt; Gannon & Cottrell, P.C.;
                  Alliance Defense Fund, on briefs), for A.O.V.

                  David D. Masterman; Gregory R. Nevins (Masterman & Graham;
                  Lambda Legal Defense and Education Fund, Inc., on briefs), for
                  J.R.V.


        Both parents appeal from the trial judge's decision in this domestic relations proceeding.

A.O.V., the mother, contends the trial judge erred (1) in granting joint custody of their children

and not prohibiting J.R.V., the father, from exposing the children to his homosexual lifestyle,

(2) by not requiring the father to pay more of the daughter's private school tuition or more of the

children's transportation costs for visitation, and (3) in not awarding the mother sufficient

spousal support, limiting it to a defined duration, and refusing to grant a reservation for spousal

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

support.  In his appeal, the father contends the trial judge improperly imposed restrictions on his visitation with the children.

Because the two cases involve similar factual and legal issues, we consolidated the appeals for purposes of oral argument and for the purposes of this decision.  We hold the trial judge erred by failing to grant the mother a reservation for spousal support.  We also hold that the record demonstrates no error concerning the other issues raised on appeal.

Background

The parties were married in 1987.  During the marriage, the mother, a former teacher, remained at home to manage the household and care for the three children, born in 1992, 1998, and 1999.  The father's military career required the family to move often throughout the years.  Prior to their separation in 2004, the family lived together in a house in Stafford, Virginia.  Upon their separation, the mother moved with the children to South Carolina to live with her sister.

The divorce suit stemmed primarily from a separation and the father's homosexuality.  The evidence proved the father had affairs before the separation.  The father testified that he met his current paramour in May of 2004 and that he and the man are an exclusive couple.  They share rent at their house, utilities, and grocery costs.

A judge of the circuit court entered a *pendente lite* decree ordering the father to pay $2,131 a month in spousal support.  The judge also entered a *pendente lite* order giving the mother primary custody of the children and the father custody on certain dates.  The order provided that "for weekends and long weekends" the children would travel by air unless the parties otherwise agreed.  For longer periods, the parties would share the driving.  The parties would share travel costs equally, except the mother's expenditure was capped at $2,000 a year.  In addition, the order prohibited the father from having his companion spend the night during

visitations, engaging in public displays of affection in the children's presence, leaving the children in his companion's care, and discussing sexuality issues with the children.

After an evidentiary hearing on all the issues, the trial judge reviewed the factors under Code § 20-124.3, found the father to be a fit father, and further found he has a good relationship with the children. Specifically, he found the children were still young and needed both parents; both parents were physically and mentally fit; and positive relationships existed between each parent and the children. Additionally, the judge considered the children's needs to have relationships with both of their extended families; the propensity and interests of both parents to participate in the children's upbringings; and "the propensity of each parent to actively support the children's contact relationship with the other parent." The trial judge awarded the parties joint custody of the children, with primary custody to the mother.

The trial judge awarded the father visitation one weekend a month, some holidays, and four weeks in the summer. He continued two of the limitations imposed on visitation in the *pendente lite* order. That is, that the father cannot have any companion with whom he has a romantic relationship stay overnight (between midnight and 6:00 a.m.) or demonstrate affection with third parties in the presence of the children.

Reviewing the factors in Code § 20-107.1, the trial judge awarded the mother $2,000 a month in spousal support for the duration of eight years. He specifically addressed each of the statutory factors and based the award on his determination of the application of these factors to the facts he found in this case. The trial judge found that the term of eight years for spousal support was appropriate "in view of the duration of the marriage; in view of the fact that after eight years, one of the children and two of the other children will either be at or near majority, and no longer will demand the time and effort of [the mother]." He noted that "[g]iven [the mother's] background, her training, her educational experience and her work experience, by that

time she should be able to be economically self-sufficient." The judge also added he was taking into account the parties' settlement agreement that provides the mother will receive a portion of the father's retirement for the duration of her life.

The trial judge calculated the father's monthly income as $9,983, because some of his income was not subject to income tax. He awarded $1,799 a month for child support. Regarding the oldest daughter's education, the trial judge found she was progressing better in private school than she had in public school. In his view, she would benefit by continuing with private schooling for the near future. Thus, he deviated from the child support guidelines to award an additional $200 a month for her education expenses. He ruled the father would not be entirely responsible for the cost because it might be a temporary situation and because it had not been the father's decision to send the daughter to private school.

The trial judge ordered the father to pay 60% of any airline costs for the children's "regular visitation" with him and the mother to pay the remaining 40%. For short visits when the parties chose to drive the children, they would share the driving by half. For visits for more than three days, either the parties would share the driving or the father would bear the whole cost of airfare for the children.

The trial judge entered a final decree of divorce based on the parties living apart during a one-year separation. The final decree affirmed and incorporated a partial settlement agreement concerning the parties' property, and it contained the judge's rulings on custody, visitation, and support.

Custody

The mother contends the trial judge erred by not granting her sole custody of the children and by not prohibiting the father from exposing the children to his homosexual lifestyle. She argues she should have received sole custody of the children due to the father's cohabitation with

his homosexual lover, his actions which "led directly to the destruction of this family unit," his placement of his own desires over his children's welfare, the negative effects his homosexuality has had on the children, and the parties' inability to communicate. The father responds that Virginia has no per se rule mandating denial of custody due to homosexuality, that no evidence demonstrated his homosexuality had an adverse effect on the children, and that the evidence demonstrated he was a loving father. Thus, he asserts the trial judge did not err in decreeing joint custody.

The father appeals, however, the imposition of visitation restrictions and contends the trial judge erred by considering his homosexuality when placing restrictions on his visitation with the children. The mother responds that the trial judge's restrictions would be required whether the father was homosexual or heterosexual.

In determining child custody, a trial judge must "give primary consideration to the best interest of the child[ren]." Code § 20-124.2(B). The standard of review for child custody and visitation issues is well-settled:

> The authority vested in a trial court to decide issues concerning the care, custody, support and maintenance of the minor children, the visitation rights of the non-custodial parent, and the extent to which those rights and responsibilities shall be apportioned between estranged parents is a matter of judicial discretion which courts must exercise with the welfare of the children as the paramount consideration.

Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 11 (1986).

Homosexuality by itself does not render a parent unfit. Doe v. Doe, 222 Va. 736, 746-48, 284 S.E.2d 799, 805-06 (1981) (holding that a trial judge cannot assume, without specific proof, that a parent's homosexuality will adversely affect the child). The Supreme Court has held, however, that a parent's "illicit relationship" conducted in the presence of a child is a factor for the trial judge to consider.

> In all custody cases . . . , the court must decide by considering all the facts, including what effect a nonmarital relationship by a parent has on the child. . . . An illicit relationship to which minor children are exposed cannot be condoned. Such a relationship must necessarily be given the most careful consideration in a custody proceeding.

Brown v. Brown, 218 Va. 196, 199, 237 S.E.2d 89, 91 (1977). The application of these factors on the custody determination requires a brief review of several decisions.

In Brown, evidence proved the mother's relationship with her lover adversely impacted the children. 218 Va. at 200, 237 S.E.2d at 92. The mother openly cohabitated with a man in the children's presence for an extended period. Id. Under these facts, the Supreme Court affirmed the trial judge's determination that the adulterous relationship rendered the mother unfit. Id. at 200-01, 237 S.E.2d at 92.

In Roe v. Roe, 228 Va. 722, 324 S.E.2d 691 (1985), the father lived with a man who was his lover. They shared a bed, they kissed and hugged in front of the child, and they permitted "other homosexuals [to visit] the home and engage[] in similar behavior in the child's presence." Id. at 724, 324 S.E.2d at 692. The Supreme Court held that the father's conduct violated the standards discussed in Brown but expressly noted that its decision in Brown "was not based on the mother's adulterous relationship in the abstract, but rather on the fact that it was conducted in the children's presence." Roe, 228 Va. at 727, 324 S.E.2d at 693. The Court applied Brown to hold that "[t]he father's continuous exposure of the child to his immoral and illicit relationship renders him an unfit and improper custodian as a matter of law." Roe, 228 Va. at 727, 324 S.E.2d at 694. This holding was based in part upon the observation that the father engaged in "unlawful" conduct. Id. at 728, 324 S.E.2d at 694 (referencing Code § 18.2-361, which penalizes sodomy).

In Bottoms v. Bottoms, 249 Va. 410, 457 S.E.2d 102 (1995), the Supreme Court affirmed the circuit court's custody award to the child's grandmother where the mother was engaged in a

homosexual affair.  Id. at 421, 457 S.E.2d at 109.  Reciting the rule that "a lesbian mother is not *per se* an unfit parent," the Court held that the mother's conduct was still an "important consideration in determining custody," and it specifically referred to the Virginia statute criminalizing sexual "conduct inherent in lesbianism."  Id. at 419, 457 S.E.2d at 108; see also Code § 18.2-361.  The Bottoms Court noted additional support in the record for the trial judge's custody award, including the mother's habit of disappearing for days, her lack of self-sufficiency, her inability to control her temper, and her neglect of the child when in her care.  Id. at 419-20, 457 S.E.2d at 108.  The Court also noted the record established the child had been harmed by living with his mother, as demonstrated by the child's use of vile language and tantrums.  Id. at 420, 457 S.E.2d at 108.  In short, the Court cited a host of factors, other than the mother's lesbian relationship, supporting the trial judge's custody award to the grandmother, including the mother's own neglect of the child and evidence supporting a finding of actual harm to the child.

We note that the holdings in Roe and Bottoms are weakened to the extent that they relied on Code § 18.2-361's criminalization of certain sexual acts.  Since then, Lawrence v. Texas, 539 U.S. 558 (2003), and Martin v. Ziherl, 269 Va. 35, 607 S.E.2d 367 (2005), have cast serious doubts upon the constitutionality of the statute as it applies to private conduct between consenting adults.  However, the central holdings of Roe and Bottoms remain strong:  the court's primary concern is the best interest of the child, which requires consideration of actual harm to the child as a factor in determining that best interest.

Ford v. Ford, 14 Va. App. 551, 419 S.E.2d 415 (1992), demonstrated that our concern is with exposing children to actual harm, not with the relationships themselves.  There, this Court upheld the joint custody determination where the father and his companion "were sleeping together."  The evidence proved the father and the child "spent nights at [the father's

- 7 -

companion's] home on a regular basis" and the father later moved into his companion's home, where "the couple maintained separate bedrooms." Id. at 553, 555, 419 S.E.2d at 417, 418. The evidence showed that the father and his companion "made efforts to establish for [the child] a nonthreatening platonic relationship." Id. at 553, 419 S.E.2d at 417. Affirming the joint custody ruling, this Court noted that Brown had not established a "per se rule prohibiting awarding custody to a parent involved in an adulterous relationship," but rather that the "standard governing . . . review of this issue is 'the extent to which the child is exposed to an illicit relationship.'" Ford, 14 Va. App. at 555-56, 419 S.E.2d at 418 (quoting Brinkley v. Brinkley, 1 Va. App. 222, 224, 336 S.E.2d 901, 902 (1985)).

In a more recent case, this Court reviewed the trial judge's award of joint custody of the child after considering both parents' post-separation relationships. Piatt v. Piatt, 27 Va. App. 426, 499 S.E.2d 567 (1998). Citing Brown, we referenced the general rule that a trial judge "examines the sexual conduct of a parent to determine whether it has had any adverse impact on the child." Piatt, 27 Va. App. at 432, 499 S.E.2d at 570. We noted that "[t]his standard applies to both heterosexual and homosexual conduct." Id. at 432 n.2, 499 S.E.2d at 570 n.2. Thus, we held that the parents' post-separation relationships "were facts for the trial court to consider" and affirmed the trial judge's award of primary custody to the father, ruling evidence supported the judge's conclusion that the mother provided a less stable home environment for the daughter. Id. at 433, 499 S.E.2d at 570.

In sum, Virginia law requires trial judges, when determining custody, to consider the extent to which the child is exposed to a parent's romantic relationship and whether that relationship had an "adverse impact" on the child. The mother primarily cites the father's homosexuality and his "willingness to expose [the] children to the social condemnation resulting from an active homosexual relationship" as rendering him unfit to share custody of the children.

The father and his companion testified, however, that they are not open about their relationship to the children. The father calls the man his friend and told the children that they are roommates. When the children visit, the man sleeps at his condominium or at a friend's house instead of the house he shares with the father. At the hearing, the mother admitted the children seemed happy and had not demonstrated any negative effects from their visits with the father.

Ample evidence in the record supports the trial judge's finding that the father is a fit parent. Family friends described him as a good father. The mother described him as an involved parent during their marriage. During visitations, the father either takes leave from his job or works from home in order to be with the children. When the children visit, he takes them hiking, to the park, biking, to museums, and to the movies. In sum, the record provides evidence showing that the father is discreet in the presence of the children about his romantic relationship, that the relationship has not had an adverse impact on the children, and that the father is a good parent. Thus, taking these factors into consideration, the trial judge did not abuse his discretion by granting joint custody.

The mother alternatively argues that, if the trial judge did not err by giving the father joint custody, he erred by not prohibiting the father from exposing the children to his homosexual lifestyle. She asserts his history of self-serving actions demonstrates he should not be allowed discretion in exhibiting his homosexuality around the children. The father responds that Virginia has no per se rule to separate a parent's companion from the children and that no evidence proved his companion's presence harmed the children. Indeed, the father appeals the restrictions on his visitation with the children, contending the imposition of the restrictions was error because the evidence did not show adverse effects on the children, the Virginia sodomy statute is unconstitutional and cannot be considered in deciding custody matters, and the trial judge erred by considering the disapproval of homosexuality in the community in determining

visitation and parental rights. The mother responds that the restrictions would apply whether the father was heterosexual or homosexual, that the homosexuality of a parent raises additional concerns, that the father lacks standing to challenge Virginia's sodomy statute, and that Lawrence does not affect Virginia custody law.

As noted above, a trial judge's decisions on custody and visitation matters are ones within judicial discretion, where the child's welfare is the overriding consideration. Eichelberger, 2 Va. App. at 412, 345 S.E.2d at 11. In addition, in imposing visitation restrictions, Virginia decisions hold that a trial judge may consider "what effect a nonmarital relationship by a parent has on the child." Brown, 218 Va. at 199, 237 S.E.2d at 91; see also Carrico v. Blevins, 12 Va. App. 47, 50, 402 S.E.2d 235, 237 (1991) (upholding the restriction that the child could not be kept overnight where the mother and her lover lived together). We have held, however, "[t]he relationship between a child and non-custodial parent should not be subject to the dictates of the custodial parent unless circumstances justify placing restrictions or conditions on the visitation privileges." Eichelberger, 2 Va. App. at 413, 345 S.E.2d at 12. Thus, restrictions on visitation should be implemented by the trial judge with care and restraint.

During the time between the *pendente lite* order and the custody hearing, the children had visited the father. The record contains no evidence they suffered any harm from being in the presence of the father's companion or from the lack of stricter restraints on visitation. In awarding visitation to the father, the trial judge attempted to strike a balance between the mother's disapproval of the father's relationship, the Commonwealth's traditional concern over exposing children to extra-marital relationships, and the importance of the father's relationship with his children. In view of the circumstances of this case, we hold that the trial judge did not abuse his discretion in imposing visitation restrictions. The circumstances did not mandate that he bar the father's companion from the children's presence, but neither did he abuse his

discretion by prohibiting the father from allowing his companion to occupy the home overnight or engaging in displays of affection while the children visit.

The father argues that restrictions can only be placed on visitation if there has been a showing of harm or a specific danger of harm to the children. This contention is not supported by Virginia case law. See Carrico, 12 Va. App. at 50-51, 402 S.E.2d at 237 (upholding a visitation restriction without a finding of adverse effects on the child or a specific risk of harm to the child). The father's other arguments on appeal are not within this Court's purview. He did not argue at any point in the hearing that the Virginia sodomy statute was unconstitutional in its application to him or that the trial judge could not consider societal views of homosexuality. See Rule 5A:18.

Finally, as to the mother's complaint that "there is no mechanism in the Final Decree that would expand the restrictions if and when the Father changes lovers again," we note that the trial court retains jurisdiction over custody matters until the children reach the age of majority. Eichelberger, 2 Va. App. at 412, 345 S.E.2d at 12. "The court, in the exercise of its sound discretion, may alter or change custody or the terms of visitation when subsequent events render such action appropriate for the child's welfare." Id. Thus, it was appropriate for the trial judge to leave hypothetical questions about the future undecided because the trial judge can revisit custody issues when and if circumstances change.

## Spousal Support

The mother contends the trial judge erred by awarding spousal support for a defined duration and by denying her a reservation to seek future support. The mother argues she was blameless for the marital breach and, therefore, the law imposes a duty on the father to maintain her "according to the station in life to which she was accustomed during the marriage." Via v. Via, 14 Va. App. 868, 870, 419 S.E.2d 431, 433 (1992). She asserts the award was insufficient

- 11 -

to meet her needs and provide for her accustomed lifestyle of the family, and she suggests $5,566 combined for child and spousal support would be a sufficient monthly amount. The mother additionally argues that the award amount was erroneous because it was determined arbitrarily. The father responds that the trial judge's decisions on spousal support were not plainly wrong and were within his sound discretion.

The standard of review for deciding spousal support issues is well-settled:

> "Whether and how much spousal support will be awarded is a matter of discretion for the trial court." Barker v. Barker, 27 Va. App. 519, 527, 500 S.E.2d 240, 244 (1998). "'In fixing the amount of the spousal support award, . . . the court's ruling will not be disturbed on appeal unless there has been a clear abuse of discretion. We will reverse the trial court only when its discretion is plainly wrong or without evidence to support it.'" Moreno v. Moreno, 24 Va. App. 190, 194-95, 480 S.E.2d 792, 794 (1997).

Northcutt v. Northcutt, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002); see also Huger v. Huger, 16 Va. App. 785, 791, 433 S.E.2d 255, 259 (1993).

In determining spousal support, trial judges must consider the financial situations and living expenses of the parties, as well as the factors listed in Code § 20-107.1. "A wife who is entitled to support has the right to be maintained in the manner to which she was accustomed during the marriage, but the court must balance her needs against the husband's ability to pay." Lapidus v. Lapidus, 226 Va. 575, 581, 311 S.E.2d 786, 789 (1984). Thus, when the trial judge "awards spousal support based upon due consideration of the factors enumerated in Code § 20-107.1, as shown by the evidence, its determination 'will not be disturbed except for a clear abuse of discretion.'" Dodge v. Dodge, 2 Va. App. 238, 246, 343 S.E.2d 363, 367 (1986) (quoting Thomasson v. Thomasson, 225 Va. 394, 398, 302 S.E.2d 63, 66 (1983)).

In making the award for spousal support, the trial judge said, "Probably, like all divorces, the standard of living established during the marriage cannot be duplicated twice for the same price as one, but certainly I believe [the mother] is entitled to as close to that as can be

established, given her current circumstances." The evidence showed that after the separation, the mother's and the father's expenses were approximately the same. The mother listed her monthly expenses at $5,566, and the father listed his at $5,869. Although the trial judge used the "grossed up" income figure of $9,983 a month to calculate child support under the guidelines, the father's actual monthly income was $9,191. The record established that the trial judge considered the evidence concerning the pre-separation standard of living and the father's ability to pay. We hold, therefore, the trial judge's award of $3,799 to the mother for combined spousal support and child support was not a clear abuse of discretion in the light of the circumstances of this case.

In making a spousal support determination, a trial judge must consider all the factors listed in Code § 20-107.1. Failure to do so is grounds for reversal. Woolley v. Woolley, 3 Va. App. 337, 344, 349 S.E.2d 422, 426 (1986). "'The requirement that the trial court consider all of the statutory factors necessarily implies substantive consideration of the evidence presented as it relates to all of these factors.'" Calamos v. Calamos, 4 Va. App. 96, 100, 354 S.E.2d 102, 105 (1987) (quoting Woolley, 3 Va. App. at 345, 349 S.E.2d at 426). The trial judge is not required, however, to specify exactly what consideration he or she gave to each statutory factor. Id. A trial judge's findings must have a basis in the record. If they do not, "the court has abused its discretion." Woolley, 3 Va. App. at 345, 349 S.E.2d at 426.

In support of her contention that the spousal support amount was determined arbitrarily, the mother argues the award was not based on the factors listed in Code § 20-107.1. Specifically, she asserts the trial judge did not consider the father's "risking the health of the Mother by clandestinely engaging in several affairs . . . while the parties still engaged in regular sexual relations" and his fault in destroying the family unit. Code § 20-107.1(E)(6) lists the "contributions, monetary and nonmonetary, of each party to the well-being of the family" as one

factor to consider. The mother provided ample evidence at the hearing as to the events leading to the end of the marriage and the father's role in those events; she argued these facts extensively to the trial judge. Our review of the record and the trial judge's ruling convinces us that the judge gave due consideration to matters and to each of the statutory factors.

The mother also quotes from the transcript where the trial judge told counsel, "I don't know what formula you used to do the pendente lite, but I assume you used some formula a little bit different than the one that I used. I did do some preliminary calculations, and if it is approximately the same, that is my intent." She argues that this "admission that [the trial judge] really only sought to mirror the pendente lite award shows that [the judge] did not give the factors serious consideration in light of the evidence." The transcript does not indicate that the trial judge "only sought to mirror" the *pendente lite* award of spousal support; the trial judge made his comment when trial counsel asked him about child support, not spousal support. Because there is no clear abuse of discretion, we will not disturb the decision regarding the amount of spousal support. See Calamos, 4 Va. App. at 100, 354 S.E.2d at 105.

The mother further contends that the defined duration for the spousal support was error because the trial judge arbitrarily set the duration for eight years based solely on half of the term of the marriage. In addition, she argues that the trial judge's failure to award permanent support was an abuse of discretion because the record did not support an award of a defined duration. The father responds that the trial judge specifically referenced factors and evidence in the record supporting an award of limited duration.

Code § 20-107.1 provides, in pertinent part:

> The court, in its discretion, may decree that maintenance and support of a spouse be made in periodic payments for a defined duration . . . .

\* \* \* \* \* \* \*

- 14 -

> In contested cases in the circuit courts, any order granting, reserving or denying a request for spousal support shall be accompanied by written findings and conclusions of the court identifying the factors . . . which support the court's order. If the court awards periodic support for a defined duration, such findings shall identify the basis for the nature, amount and duration of the award and, if appropriate, a specification of the events and circumstances reasonably contemplated by the court which support the award.

In a detailed ruling from the bench, transcribed in the record, the trial judge addressed the circumstances supporting his decision as to the duration of spousal support. As required, the trial judge determined the duration of spousal support in light of the "reasonably foreseeable future." See Bruemmer v. Bruemmer, 46 Va. App. 205, 210, 616 S.E.2d 740, 742 (2005) (affirming the limited duration placed on spousal support where the wife had no present income but had earned $100,000 annually before marriage). In this case, the mother was a teacher prior to the marriage, but then remained at home to manage the household and care for the children. Upon the last scheduled spousal support payment on October 1, 2013, the children will be 14, 15, and 21. The record does not establish the trial judge abused his discretion in concluding that the mother would be able to resume her career once the children are older and more self-sufficient.

The mother argues that, in any event, the trial judge erred by not granting her a reservation to seek future spousal support because such a reservation must be made if requested. The father responds that a reservation of support is not obligatory upon request under Code § 20-107.1 after the 1998 amendment.

"In addition to or in lieu of an award [of spousal support] pursuant to subsection C, the court may reserve the right of a party to receive support in the future." Code § 20-107.1(D). In Bacon v. Bacon, 3 Va. App. 484, 491, 351 S.E.2d 37, 41 (1986), we ruled, "We know of no good reason for a court to refuse to include such a reservation if requested and we believe that it is consistent with the purpose of the law to include it." Thus, we held, "where there is no bar to the

- 15 -

right of spousal support, it is reversible error for the trial court, upon request of either party, to fail to make a reservation in the decree of the right to receive spousal support in the event of a change of circumstances." Id.

Prior to the enactment of Code § 20-107.1(D), the Supreme Court repeatedly held that courts have the inherent power to make a reservation in a final divorce decree to change or modify spousal support as necessitated by the changed circumstances of the parties. See, e.g., Losyk v. Losyk, 212 Va. 220, 222, 183 S.E.2d 135, 137 (1971); Brinn v. Brinn, 147 Va. 277, 285, 137 S.E. 503, 505 (1927). This power stems from the flexibility of a court in an equitable proceeding to "adapt its relief to the circumstances of the particular case, as the demands of justice may require." Brinn, 147 Va. at 285, 137 S.E. at 505. The enactment of Code § 20-107.1(D), providing that a trial judge "may" grant a reservation of spousal support, did not change the requirement that trial judges grant a reservation of right upon request. "'[T]he common law is not to be considered as altered or changed by statute unless the legislative intent be plainly manifested.'" Hyman v. Glover, 232 Va. 140, 143, 348 S.E.2d 269, 271 (1986) (quoting Hannabass v. Ryan, 164 Va. 519, 525, 180 S.E. 416, 418 (1935)). Code § 20-107.1 does not manifest a legislative intent to change the common law. Therefore, the common law remains unchanged, and trial judges still must grant a reservation of spousal support upon request, unless so barred.

In her amended bill of complaint, the mother asked for many things, including "all the relief provided by Va. Code § 20-103, § 20-107.1, § 20-107.2, § 20-107.3, § 20-108.1, and § 20-124.3." She specifically asked for a reservation of spousal support in her proposed final decree and her "Exceptions to Final Decree." In light of the mother's request for spousal support pursuant to Code § 20-107.1, her request for a reservation of spousal support in her proposed

final decree, and her exceptions to the final decree, we hold the trial judge erred in refusing to grant the reservation.  See Bacon, 3 Va. App. at 490, 357 S.E.2d at 41.

School and Transportation Expenses

The mother contends the trial judge erred by not requiring the father to pay for either all of their oldest daughter's private school and the children's transportation costs or at least a share proportionate to the parties' incomes.  She argues that once the trial judge found it was in the daughter's best interest to attend private school, the judge should have applied the same formula used for other necessary expenses under Code § 20-108.2(D).  The father argues there is no mandatory nexus between a finding of the child's best interests and a requirement that the private school be paid for proportionately by the parents; he notes the cost of education was included in the basic child support award.  The father additionally responds that the trial judge properly determined the sharing of travel costs through discretion, not a formula.

"Decisions concerning child support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence."  Smith v. Smith, 18 Va. App. 427, 433, 444 S.E.2d 269, 274 (1994).  Code § 20-108.2 provides guidelines for setting child support based on the gross income of the parents and the number of children.  A trial judge may deviate from the guidelines based on a variety of factors, including the costs of visitation travel and education expenses, by taking into account the parents' abilities to pay and the best interests of the children.  Code § 20-108.1(B).  The statutorily presumptive amount of child support includes educational expenses and cost of visitation travel.  See Smith, 18 Va. App. at 435, 444 S.E.2d at 275 ("Implicit in the statutory scheme is that educational expenses are included in the presumptive amount of child support as calculated under the Code."); Code § 20-108.1(B)(2) and (5) (providing that cost of visitation travel and educational expenses as possible grounds for deviating from the presumptive amount).

The trial judge deviated from the guidelines by requiring the father to pay an additional $200 a month for the oldest daughter's education expenses and for 60% of airline travel for the children for short visits and all of the airfare for extended visits. These deviations from the guidelines were on permissible grounds, that of education and travel expenses. See Code § 20-108.1(B)(2) and (5). The evidence in the record and the judge's findings do not demonstrate an abuse of discretion.

As for the mother's contentions that these expenses should be divided in proportion to the parties' incomes under Code § 20-108.2, neither the statute nor any case law supports this proposition. In pertinent part, Code § 20-108.2(D) provides that "in addition to any other child support obligations established pursuant to this section, any child support order shall provide the parents pay in proportion to their gross incomes . . . any reasonable and necessary unreimbursed medical or dental expenses." This part of the statute, which does not give a trial judge discretion, is specifically limited to medical and dental expenses and does not apply to travel or education expenses.

Conclusion

For these reasons, we affirm the final decree in part, reverse in part, and remand. Holding that the trial judge abused his discretion in failing to grant the mother a reservation of right to seek future spousal support, we reverse that judgment and remand for inclusion of a reservation in the decree. We further hold, however, the trial judge did not abuse his discretion by granting joint custody, in imposing the visitation restrictions on the father, in determining the amount of spousal support, by limiting spousal support to a defined duration, and by not requiring the father to pay more for the daughter's private school tuition or the children's transportation costs.

Affirmed, in part, reversed, in part, and remanded.

- 18 -